Mario ARTHUR, Elsaida Bodley, Harold Depass, Winston Johnson, Ann Long, Joseph Percival, Dudley Rennie, Sarah Richardson and Vivian Wright, individually and on behalf of all others similarly situated, Plaintiffs,

v.

STARRETT CITY ASSOCIATES, Starrett City, Inc., Delmar Management Company and Joseph B. Goldman, Acting Commissioner, State of New York, Division of Housing and Community Renewal, Defendants.

No. 79 C 3096.

United States District Court, E. D. New York.

Feb. 27, 1981.

**544**

Karene Ann Freeman, Open Housing Center, Inc., Lawrence M. Grosberg, William O'Brien, Columbia Law School Fair Housing Clinic, Charles E. Carter, James I. Meyerson, N.A.A.C.P., New York City, for plaintiffs.

Robert Abrams, Atty. Gen., State of New York, New York City, for defendant Goldman by George D. Zuckerman, Stephen M. Jacoby, Asst. Attys. Gen., Ann Horowitz, Deputy Asst. Atty. Gen., New York City.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Starrett defendants by Morris B. Abram, Jack Hassid, David Dunn, New York City.

Edward R. Korman, U. S. Atty., E. D. New York, Brooklyn, N. Y., for HUD, appearing by special leave of the Court by Richard P. Caro, Asst. U. S. Atty., Brooklyn, N. Y.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

This civil rights class action is before the court on defendants' motion to dismiss the complaint for failure to join the United States Department of Housing and Urban Development (HUD). F.R.Civ.P. 12(b)(7), 19. HUD was granted leave to appear and present its position on the motion. For the reasons which follow, defendants' motion is denied.

Plaintiffs are middle income black persons who are financially eligible and have unsuccessfully applied for rental apartments at Starrett City, a privately owned, federally assisted housing development on a previously undeveloped 153-acre site in Brooklyn, New York. Starrett City presently has 5,581 apartments and approximately 17,000 tenants. Defendants are Starrett City Associates, a limited partnership that owns and operates Starrett City; Starrett City, Inc., a general partner in Starrett City Associates and a limited profit housing corporation organized under Article II of the Private Housing Finance Law of New York (McKinney); and Delmar Management Company, the managing agent for Starrett City. These defendants will hereinafter be referred to simply as Starrett. Also named as a defendant is Joseph B. Goldman, Acting Commissioner of the New York State Division of Housing and Community Renewal.

Claiming that they have been placed on a lengthy waiting list and unfairly denied housing at Starrett City, plaintiffs seek declaratory and injunctive relief as well as money damages from defendants

"for establishing and using a racial quota and adhering to other practices of a racially discriminatory nature in the rental and assignment of apartments . . . .

\*      \*      \*      \*      \*      \*

"[Starrett has] established a racial quota with regard to the rental of apartments at Starrett City. Pursuant to defendants' quota, no more than 30% of the apartments were to be rented to minority persons. A certain proportion of this 30% quota is specifically set aside for Black persons."

Complaint, ¶¶ 1, 37. Defendants' practices are alleged to violate Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601–3619; Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.; 42 U.S.C. §§ 1981, 1982, 1983; sections 32 and 602 of the New York State Private Housing Finance Law (McKinney); and the Fourteenth Amendment to the Constitution.

Pursuant to regulations promulgated by HUD, see C.F.R. § 200.600–640 (1980), Starrett filed with HUD an Affirmative Fair Housing Marketing (AFHM) plan. The Starrett AFHM plan, approved by HUD on June 18, 1975, describes with some particularity the advertising program and community contacts through which Starrett will seek to attract a diverse pool of applicants for rental apartments. The plan also contains the following language:

"*Anticipated Results*

\* \* \* \* \* \*

"Reflecting the social and ethnic composition of surrounding neighborhoods, we would hope to achieve a social mix of 70% majority and 30% minority occupants. "*Filling Vacancies after Initial Occupancy*

"Delmar Management will maintain its own waiting lists in chronological order from date of application, always attempting to maintain good age and ethnic mixes. We expect to maintain contacts with community groups who can be helpful in outreach, and will use classified advertising as necessary."

Affidavit of Robert C. Rosenberg in Support of Motion to Dismiss, Exh. B.

Defendants' argument on this motion begins with the premise that since AFHM regulations require that a plan be submitted to and approved by HUD before any federal funds will be released, and the filing instructions provide that "anticipated results should be realistic in terms of the proportion of minority persons," HUD's approval of the plan constitutes endorsement of the alleged racial percentage figures. In this case, Starrett asserts, that conclusion is even more compelling because HUD approved an increase in its mortgage interest subsidy, granted under § 236 of the National Housing Act, 12 U.S.C. § 1715z–1, after Starrett's initial plan had been approved, allegedly with the knowledge that the additional funds were to be used to alter the sequence of building at Starrett to attract a greater number of majority applicants.

Defendants contend that HUD has the power to impose sanctions, including the withdrawal of its mortgage interest subsidy, if Starrett does not attempt to fulfill the provisions of its AFHM plan. It is claimed that the granting of relief sought by plaintiffs—an injunction against unlawful discrimination based upon the alleged racial quota used in tenant selection—"will inevitably cause Starrett City to become segregated" (Starrett memorandum at 7) and prevent Starrett from achieving its goal of overall integration as encouraged by HUD policy. Defendants contend that this, in turn, would trigger HUD sanctions for non-compliance with Starrett's AFHM plan. The possibility that Starrett might be put in the position of being required by HUD to comply with its 70%–30% "anticipated result" when the court may have found the use of a racial quota in tenant selection to be illegal, is said to subject Starrett to a substantial risk of incurring inconsistent obligations within the meaning of Rule 19(a)(2)(ii).

██ Finally, it is urged that HUD has a significant interest in this lawsuit arising out of its responsibility to formulate and implement national housing policy and its interest in promoting integration, expressed through its substantial financial commitments to and administrative involvement with housing projects such as Starrett City. Defendants conclude that plaintiffs' failure to join HUD as a party, the effect of which would have been to bind HUD to any order of the court in this action, requires dismissal of the complaint pursuant to Rule 12(b)(7).[1]

Plaintiffs respond that the guidelines contained in the AFHM regulations are directed primarily, if not exclusively, toward the *marketing* of federally assisted housing

1. It is worth noting that if HUD is a necessary party, the proper course would be to join HUD as a party defendant, see *Boles v. Greeneville Housing Authority*, 468 F.2d 476 (6th Cir. 1972), or to request its participation as *amicus curiae*, see *Guesnon v. McHenry*, 539 F.2d 1075 (5th Cir. 1976), since there has been no assertion that HUD is not subject to service of process or that its joinder would deprive the court of subject matter jurisdiction.

projects and do not purport to govern tenant *selection* decisions. The complaint, at ¶ 46, alleges:

> "Neither the affirmative fair housing marketing plan which Starrett, SCI and Delmar filed with H.U.D., nor the federal regulations (24 C.F.R. §§ 200 *et seq.*) pursuant to which the plan was submitted, requires or permits the use of quotas, the utilization of race as a criterion in the rental or assignment of apartments, or the use of any of the discriminatory practices in which Defendants engage."

According to plaintiffs this is not a challenge to Starrett's marketing or solicitation activities, its AFHM plan, or the regulations pursuant to which the plan was submitted and approved. The AFHM plan and regulations not being at issue in this action, plaintiffs contend that HUD is not a necessary party.

■ Plaintiffs' argument is the more cogent. Defendants' attempted implication of HUD based upon the latter's approval of the Starrett AFHM plan might more accurately be characterized as a defense on the merits rather than a cause for dismissal under Rule 12(b)(7). Starrett, of course, will be free to attempt to prove at a trial that its conduct in the circumstances is not violative of plaintiffs' civil rights. However, in the absence of any third-party complaint, compare *Williamsburg Fair Housing Committee v. New York City Housing Authority*, 73 F.R.D. 381 (S.D.N.Y.1976), the mere fact that defendants may defend on the ground that federal law or regulations either encourage or require the complained of practices does not mean that the action cannot go forward without HUD. See *Otero v. New York City Housing Authority*, 484 F.2d 1122, 1130 n.11 (2d Cir. 1973). In sum, defendants simply have not shown at this stage of the litigation that

"(1) in [HUD's] absence complete relief cannot be accorded among those already parties, or (2) [HUD] claims an interest relating to the subject of the action and [HUD] is so situated that the disposition of the action in [HUD's] absence may (i) as a practical matter impair or impede [HUD's] ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of [HUD's] claimed interest." Rule 19(a), F.R.Civ.P.

■ Far from claiming an interest in this action, HUD's position is that its presence as a party is not necessary within the meaning of Rule 19 and that it would oppose joinder. While those views are not binding on the court, HUD's reasons for its position are significant. Speaking through the United States Attorney HUD has represented to the court that its policy since at least 1973 is not to determine compliance by reference to achievement of "anticipated results." It appears that HUD treats the percentage figures as aspirational and that sanctions are not imposed when a developer in good faith is unable to reach these goals. HUD has formulated its policy as follows:

> "HUD does not consider the statement of anticipated results to establish a racial quota governing project occupancy nor a goal which must be reached to comply with the HUD regulation [24 C.F.R. § 200.600–640]. HUD determinations of compliance with the provisions of the approved plan are made on the basis of whether a good faith effort to fulfill the provisions of the plan and to comply with the regulations has been made and not whether implementation of the plan has resulted in the achievement of the anticipated results stated."[2]

---

2. Letter from Henry A. Hubschman, Executive Assistant to the Secretary of HUD, to Louis Nunez, Acting Staff Director, United States Commission on Civil Rights, dated August 17, 1978, *reprinted in* Report of the United States Commission on Civil Rights on *The Federal Fair Housing Enforcement Effort*, dated March 1979, at 21. *Accord,* Memorandum from John

B. Rhinelander, then Undersecretary of HUD, to Joseph D. Monticciolo, Director of New York City Area Office of HUD, dated November 4, 1976, at 2; HUD Handbook No. 8030.2, entitled *Implementation of Affirmative Fair Housing Marketing—Regulations,* dated June 1973, at 7. Certified copies of these HUD materials have been submitted to the court on this motion by

HUD's interpretations of its own regulations and its statements as to its official policy must be accepted unless plainly erroneous or inconsistent with the regulation. *United States v. Larionoff*, 431 U.S. 864, 872–73, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977); *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). Thus, on this motion, where no evidence of a contrary policy has been advanced, there is no basis to assume that HUD treats "anticipated results" in AFHM plans as enforceable obligations that may subject defendants to inconsistent obligations. Nor can it be said at this time that this is a case which will turn on an unclear issue of agency policy. Compare *Guesnon v. McHenry*, 539 F.2d 1075 (5th Cir. 1976) (HUD participation as *amicus curiae*—not party defendant—required where case presented question whether private cause of action was implied by HUD regulation). Defendants' largely unsupported assertion that HUD's apparently unambiguous policy is otherwise is insufficient to compel HUD's joinder under Rule 19. See *Feld v. Berger*, 424 F.Supp. 1356 (S.D.N.Y.1976); *Green v. Stanton*, 364 F.Supp. 123 (N.D.Ind.1973); *Alexander v. Swank*, 314 F.Supp. 1078 (N.D.Ill.1969).

This case is quite unlike *Pegues v. Mississippi State Employment Service*, 57 F.R.D. 102 (N.D.Miss.1972), where the complaint framed a direct attack on procedures defendants were required to adopt by the Department of Labor, and a substantial showing was made that agency regulations prohibited, on pain of funding penalties, the grant of several forms of relief sought by plaintiffs. Here, the chain of events that defendants suggest will result from the grant of relief sought in this action is far too remote to support a finding that Star-rett faces a "substantial" risk of inconsistent obligations if HUD is not bound by the judgment in the case. Accordingly, defendants' scenario is too speculative to require the extreme sanction of dismissal or the involuntary joinder of HUD.[3] See *National Welfare Rights Organization v. Wyman*, 304 F.Supp. 1346, 1350 (E.D.N.Y.1969). See also *Staten Island Rapid Transit Railway Co. v. S.T.G. Construction Co.*, 421 F.2d 53, 58 n.6 (2d Cir. 1970); *F.T.C. v. Manager, Retail Credit Co.*, 357 F.Supp. 347 (D.D.C. 1973).

For these reasons, and because the complaint expressly disclaims any direct challenge to HUD regulations or policy, this is not a case under Rule 19(a)(i) where, in the absence of HUD, complete relief cannot be afforded the parties. Compare *Boles v. Greeneville Housing Authority*, 468 F.2d 476 (6th Cir. 1972). Nor is the relief sought here of a kind that it can only be granted by HUD. Compare *Lopez v. Arraras*, 606 F.2d 347 (1st Cir. 1979); *Jackson v. Statler Foundation*, 496 F.2d 623 (2d Cir. 1973); *Jones v. Board of Education Cleveland City School District*, 474 F.2d 1232 (6th Cir. 1973). This determination of whether a defendant is necessary by reference to the relief sought also distinguishes this case from *Williamsburg Fair Housing Committee v. New York City Housing Authority*, *supra*, where the court concluded that the complaint's suggestion of HUD complicity in acquiescing to illegal rental quotas implied a claim for relief against the agency itself.

Furthermore, Rule 19(a)'s concern for the interests of the allegedly necessary absent party will not be impaired by the progress of this case without HUD. Because of its expressed unwillingness to be-

the United States Attorney. See also letter to the court, dated March 31, 1980, from the United States Attorney, by Richard P. Caro, Esq., Assistant United States Attorney, stating, *inter alia*, on behalf of HUD: "This continues to be the agency's formal position."

**3.** The conclusion that defendants have failed to show that they face a substantial risk of inconsistent obligations is buttressed by the United States Attorney's most recent letter to the court stating, in relevant part:

"Further, in any case, HUD would not require Starrett City to take any action that was inconsistent with an Order of this Court, including sanctioning Starrett City for obeying any such order."

Letter dated February 24, 1981, from the United States Attorney, by Richard P. Caro, Esq.

**548**

come a party, the risk of prejudice to HUD by virtue of its absence is presumptively insignificant. See *National Welfare Rights Organization v. Wyman, supra*, 304 F.Supp. at 1350. Moreover, even assuming that HUD has an "interest" relating to the subject matter of this action, it can protect that interest by seeking to intervene under Rule 24,[4] or by seeking leave to file a brief as *amicus curiae* at some point during the course of this litigation. See *Laufman v. Oakley Building & Loan Co.*, 404 F.Supp. 791, 792 (S.D.Ohio 1975); *Hubert v. Saucier*, 347 F.Supp. 152, 154 (N.D.Ga.1972) (three-judge court *per curiam*).[5]

Accordingly, since defendants have not shown that Rule 19 requires either dismissal of this action or the involuntary joinder of HUD, the motion is denied.

Counsel are directed to complete all discovery by July 3, 1981, to submit a proposed pre-trial order by July 20, 1981, and to appear at a final pre-trial conference in Chambers on July 23, 1981, at 4:00 p. m., at which time a date for trial will be set.

So ordered.

---

4. In this regard, we note that Rule 24 provides specifically for the situation where an agency determines that protection of its "interest" requires its voluntary participation in an otherwise private action. The rule provides in part:

"b. Permissive Intervention.

\* \* \* \* \* \*

"When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action."

5. HUD has asserted on this motion that if the allegations of the complaint are substantiated, defendants might be in contravention of certain conciliation agreements entered into with the agency. In this light, and since the court has concluded that HUD is not a necessary party to this action, the court would be reluctant to impair HUD investigatory and compliance enforcement efforts by creating the delay and possible estoppel effects that may arise out of an involuntary joinder in the private lawsuit. See *Dyke v. Gulf Oil Corp.*, 601 F.2d 557, 569 (Temp.Emer.Ct.App.1979).