FHM CONSTRUCTORS, INC. and Hoot Owl Express Enterprises, Inc., Plaintiffs,

v.

VILLAGE OF CANTON HOUSING AUTHORITY, Thomas F. Harnett, as Commissioner of Labor of the State of New York, and Jack F. Kemp, as Secretary of the United States Department of Housing and Urban Development, Defendants.

No. 91–CV–0065.

United States District Court, N.D. New York.

Jan. 6, 1992.

Damon & Morey, Buffalo, N.Y., for plaintiffs; James N. Schmit, Joseph Ferraro, of counsel.

Frederick J. Scullin, Jr., U.S. Atty., Syracuse, N.Y., for defendant HUD; William H. Pease, Asst. U.S. Atty., of counsel.

Kitay and Elmer, Canton, N.Y., for defendant Village of Canton Housing Authority; John D. Elmer, of counsel.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City, for defendant Harnett; M. Patricia Smith, Asst. Atty. Gen., of counsel.

## MEMORANDUM DECISION AND ORDER

McCURN, Chief Judge.

## INTRODUCTION

In their amended complaint plaintiffs assert four causes of action. Their first and second causes of action seek a declaratory judgment that federal housing and community development laws governing the construction of low income housing, 42 U.S.C. § 1437 *et seq.*, federal prevailing wage rate legislation, 40 U.S.C. § 276a *et seq.*, and regulations promulgated thereunder, 24 C.F.R. § 941.208(d) and 24 C.F.R. § 941.-503(d), preempt New York State Labor Law section 220 as it pertains to work done on the project at issue. Their third cause of action seeks to enjoin the Commissioner of the State of New York Department of Labor from proceeding with an administrative proceeding concerning this project which is currently pending before a state hearing officer. Finally, their fourth cause of action seeks a declaration that plaintiffs will be entitled to a money judgment against HUD for any amount that they ultimately may be determined to owe in the state administrative proceeding.[1]

Defendant, Jack Kemp as Secretary of the United States Department of Housing and Urban Development ("HUD"), moves to dismiss the amended complaint for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) or, in the alternative, for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiffs oppose this motion to dismiss as to their first three causes of action on the grounds that HUD is an indispensable party and as to their fourth cause of action on the grounds that this court has subject matter jurisdiction, that HUD has waived its sovereign immunity, and that plaintiffs have stated a claim under the doctrine of equitable estoppel. In addition, plaintiffs cross-move to file a second amended complaint pursuant to Fed.R.Civ.P. 15.

---

1. Prior to this motion to dismiss, HUD had previously moved to dismiss. In response to that motion, plaintiffs cross-moved to amend their complaint. HUD then voluntarily withdrew its motion to dismiss and did not oppose plaintiffs' amendment. After plaintiffs filed their amended complaint, HUD made the present motion to dismiss. In response, plaintiffs again cross-moved to file a second amended complaint. The changes plaintiffs propose to make in their second amended complaint seek to address HUD's claims that this court lacks subject matter jurisdiction and that plaintiffs have failed to state a claim under the doctrine of equitable estoppel. *See* Plaintiffs' Proposed

## BACKGROUND [2]

Plaintiff, FHM Constructors, Inc. ("FHM"), is a construction company which entered into a contract with defendant, Village of Canton Housing Authority ("Housing Authority"), to build a low income housing project funded by HUD. *See* Plaintiffs' Amended Complaint at ¶¶ 8, 9. Plaintiff, Hoot Owl Express Enterprises, Inc. ("Hoot Owl"), was a subcontractor of FHM on this project. *See* Plaintiffs' Amended Complaint at ¶ 12. HUD approved the specifications for the project, and these specifications formed part of the construction contract. *See* Plaintiffs' Amended Complaint at ¶¶ 8, 10. The construction contract specifically required the contractor to pay *"not less* than the salaries or wages prevailing in the locality of the project, as predetermined by the Secretary of Labor of the United States pursuant to the Davis–Bacon Act (Title 40, U.S.C. §§ 276a–276a–5)." *See* Plaintiffs' Amended Complaint at ¶ 11 (emphasis added). Plaintiffs paid their employees according to the federal prevailing wage rate schedule which was included in the contract specifications. *See* Plaintiffs' Amended Complaint at ¶ 14.

Some ten months after plaintiffs had completed work on the project and had paid their employees, the New York Department of Labor issued the Housing Authority a prevailing wage rate schedule for the occupations involved in the work which had been performed on the project. *See* Plaintiffs' Amended Complaint at ¶ 15. After plaintiffs refused to pay, the New York Department of Labor commenced a state administrative proceeding in which it contends that the higher state wage rates are applicable to the project and that plaintiffs owe more than $118,000 in additional wages to certain individuals they employed on the project.[3] *See* Plaintiffs' Amended Complaint at ¶ 17. Based on these facts, plaintiffs seek to enjoin the administrative proceeding. They also seek a judgment declaring that the federal prevailing wage rate legislation preempts New York law. Finally, they seek monetary relief from HUD should the state proceeding result in plaintiffs being required to pay their workers the prevailing state wage rate.

## DISCUSSION

In its memorandum of law in support of its motion to dismiss, HUD, unsure of which legal theory plaintiffs are relying on to support their claims, argues that plaintiffs have failed to state a claim under either the doctrine of equitable estoppel, tort, or contract. In the alternative, HUD alleges that even if plaintiffs have stated a claim, this court lacks subject matter jurisdiction over such a claim and that HUD has not waived its sovereign immunity.

In an attempt to remedy these perceived failings in their amended complaint, plaintiffs oppose this motion and cross-move to file a second amended complaint. Although plaintiffs strongly urge this court to permit them to amend their complaint, they maintain that even without such an amendment they have stated a claim against HUD with regard to their fourth cause of action pursuant to the doctrine of equitable estoppel. As to this cause of action, plaintiffs claim that HUD has waived its sovereign immunity under 42 U.S.C. section 1404(a) and that this court's jurisdiction is founded on 28 U.S.C. section 1331. Finally, they contend that HUD's motion to dismiss their first three causes of action should be denied because HUD is an indispensable party. Since its determination of this motion with regard to plaintiffs' fourth cause of action may render a discussion of HUD's indispensability to plaintiffs' first three causes of action academic, the court will discuss this latter cause of action first.

---

Second Amended Complaint at ¶¶ 6, 31, 32, 33, 34, 36.

**2.** For purposes of this motion, HUD accepts as true the facts as alleged in plaintiffs' amended complaint.

**3.** Although plaintiffs state in their amended complaint that a hearing on this matter is scheduled for January 30, 1991, given the date of the amended complaint, the court assumes that they mean January 30, 1992.

## I. Plaintiffs' Fourth Cause of Action

### A. Subject Matter Jurisdiction

■ Before it can reach the merits of plaintiffs' claim, this court must determine whether or not it has subject matter jurisdiction over plaintiffs' fourth cause of action. Plaintiffs contend that this court has jurisdiction over this matter pursuant to 28 U.S.C. section 1331 (federal question jurisdiction) and 28 U.S.C. section 1337(a) (Commerce and Anti-trust Regulations). Additionally, in their proposed second amended complaint, plaintiffs allege that 28 U.S.C. section 2201 (Declaratory Judgment Act), 42 U.S.C. section 1404a (Federal Housing Act), 5 U.S.C. section 702 (Administrative Procedures Act), and 28 U.S.C. section 1346(a)(2) (Tucker Act) provide bases for this court's jurisdiction.

Recently, the Second Circuit has held that "an action against the sovereign is properly before the district court only if there [is] both a grant of subject matter jurisdiction and a valid waiver of sovereign immunity." *C.H. Sanders Co. v. BHAP Housing Dev. Fund Co.*, 903 F.2d 114, 117 (2d Cir.1990) (citations omitted). The relationship among the parties in *Sanders* is somewhat similar to that present here. BHAP, a non-profit asset-less organization formed specifically to construct a federally funded housing project obtained funding from HUD pursuant to which HUD agreed to provide a low-cost mortgage. BHAP, in turn, entered into a construction contract with Sanders as general contractor. This contract, prepared by HUD, required that all claims and disputes be resolved by arbitration. Although HUD was not a party to the construction contract, HUD maintained substantial control over the project, including the right to interpret the construction contract and to determine compliance therewith. *Id.* at 116–17.

After several years of work on the project, Sanders requested arbitration because it claimed that BHAP had breached the construction contract. Sanders sought to recover $1,848,010 which it claimed it was due under the contract. *Id.* at 117. Although plaintiff could not compel HUD to submit to arbitration because it was not a party to the construction contract, Sanders did request that HUD participate in the hearings. In addition, Sanders informed HUD that HUD could be held liable for any arbitration award rendered against BHAP. *Id.* HUD declined to participate stating that it considered the arbitration to be "essentially a private dispute between BHAP and Sanders." *Id.* Sanders was successful in the arbitration proceeding and subsequently sought a monetary award from HUD in the amount of the state court judgment. Sanders claimed that because HUD was liable for BHAP's debts it was bound by the award rendered in the arbitration proceeding between BHAP and Sanders. *Sanders*, 903 F.2d at 118. In addition, Sanders claimed that under federal common law, it had "equitable rights generated by HUD's course of activities pursuant to federal statutes, including the contracts it has sponsored, and prescribed for others, as a condition of federal aid." *Id.* (quoting *Trans–Bay Eng'rs and Builders, Inc. v. Hills*, 551 F.2d 370, 377 (D.C.Cir.1976)). The Second Circuit agreed with Sanders and held that the federal district court had federal question jurisdiction over Sanders' claim, arising under federal common law and the statute authorizing the loan, 12 U.S.C. section 1701q. *Id.*

In their amended complaint, as well as in their proposed second amended complaint, plaintiffs allege that their claims against HUD arise under 42 U.S.C. section 1437 *et seq.* (Federal Housing Act); 40 U.S.C. section 276a *et seq.* (Davis–Bacon Act) and Article VI of the United States Constitution. *See* Plaintiffs' Amended Complaint at ¶ 7. Assuming for purposes of this discussion that plaintiffs' fourth cause of action is not "patently frivolous on its face," their allegation that this cause of action arises under a federal statute is sufficient to sustain subject matter jurisdiction in the district court. *See C.H. Sanders Co.*, 903 F.2d at 118 (quoting *Falls Riverway Realty v. City of Niagara Falls*, 754 F.2d 49, 54 (2d Cir.1985)). Accordingly, since plaintiffs have alleged that their claims arise under federal statutes as well as the United States Constitution, the court concludes

that it has subject matter jurisdiction over this cause of action.

## B. *Sovereign Immunity*

■ Having determined that this court has subject matter jurisdiction, the next question is whether HUD has consented to suit in the district court. Plaintiffs contend that HUD has waived its sovereign immunity pursuant to 42 U.S.C. section 1404a. This statute states in pertinent part: "[t]he Secretary of Housing and Urban Development *may sue and be sued* only with respect to its functions under this chapter, and sections 1501 to 1505 of this title...." 42 U.S.C.A. 1404a (West 1991 Supp.) (emphasis added). To the contrary, HUD maintains that even if plaintiffs have stated a claim against HUD, its waiver of sovereign immunity is limited to those suits commenced in the United States Claims Court.

The resolution of this dispute hinges primarily on a determination of whether this is a suit against HUD or a suit against the United States. If the source of the funds to pay these claims is within the control of the Secretary of HUD, then this is a suit against HUD; and section 1404a provides a waiver of sovereign immunity to suit in this court. If, on the other hand, this is actually a suit against the United States, then section 1404a is not a waiver of sovereign immunity; and only the United States Claims Court has jurisdiction over these claims.

Plaintiffs rely on *Sanders* and *S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28 (2d Cir.1979), to support their claim that section 1404a is a waiver of sovereign immunity. Both of these cases concerned mortgage insurance and direct loan programs rather than construction contracts. Nevertheless, the Second Circuit's reasoning is instructive. In *Sanders*, the court held that HUD had waived its sovereign immunity pursuant to a "sue and be sued" clause similar to section 1404a. Based on this finding, the court concluded that this clause provided a waiver of sovereign immunity independent of the Tucker Act and that therefore the plaintiff could

sue HUD in district court. *Sanders*, 903 F.2d at 120. Nevertheless, the court went on to say that on remand if the district court found that HUD was liable for the arbitration award, the court would not have to engage in a further analysis of the source of the funds that would be used to satisfy its judgment. *Id.* Rather, the court should simply direct HUD to satisfy the judgment out of funds that are within its control because "[i]t is only as to such funds that the Secretary's immunity has been waived." *Id.* (citing *F.H.A. v. Burr*, 309 U.S. 242, 250–52, 60 S.Ct. 488, 492–93, 84 L.Ed. 724 (1940); *Silberblatt*, 608 F.2d at 36).

Likewise in *Silberblatt*, the court found that HUD had waived its sovereign immunity to suit in the district court. The basis for this finding was the court's conclusion that the judgment could be paid out of funds appropriated under the National Housing Act and in the control of, or subject to the discretion of, the Secretary of HUD. This was true despite the fact that the judgment would not be paid out of funds originally and specifically earmarked for the project in question. *Id.* at 36.

In the present action, plaintiffs' allegations against HUD concern HUD's requirement that a contractor in a HUD-sponsored low income housing project must pay "not less than the salaries or wages ... as predetermined by the Secretary of Labor of the United States pursuant to the Davis–Bacon Act ..." Inclusion of this clause in the construction contract is required by 42 U.S.C. section 1437j(a). Thus, this requirement is a function with regard to which section 1404a provides that the Secretary of HUD "may sue or be sued." Therefore, since section 1404a provides a waiver of sovereign immunity independent of the Tucker Act, plaintiffs may sue HUD in district court. *See Sanders*, 903 F.2d at 120. Nevertheless, it must be remembered that this waiver is limited to sums within the control of the Secretary of HUD, assuming that any such funds are found to exist. *See id.* Accordingly, having concluded that this cause of action arises under 42 U.S.C. section 1437 and that therefore 42 U.S.C. section 1404a provides a

limited waiver of HUD's sovereign immunity, the court concludes that plaintiffs' fourth cause of action is properly before this court.[4]

### C. Failure to State a Claim

■ Plaintiffs base their claim against HUD on the doctrine of equitable estoppel.[5] In order to rely on equitable estoppel, plaintiffs must show that (1) they relied on HUD's conduct in such a manner as to worsen their position and (2) their reliance was reasonable in that they did not know nor should they have known that HUD's conduct was misleading. *Heckler v. Community Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42, 51 (1984). In addition, because HUD is a government agency, plaintiffs must demonstrate additional grounds for estoppel, not applicable to private litigants. *See Heckler*, 467 U.S. at 60, 104 S.Ct. at 2224, 81 L.Ed.2d at 52. Estoppel is permitted against an agency of the United States only if there has been affirmative, serious misconduct by a government agent upon which a party reasonably relied to its detriment. *United States v. RePass*, 688 F.2d 154, 158 (2d Cir.1982); *Diamond v. Federal Emergency Management Agency*, 689 F.Supp. 163, 169 (E.D.N.Y.1988); *Cook v. Pension Benefit Guar. Corp.*, 652 F.Supp. 1085, 1090 (S.D.N.Y.1987); *Hamil-ton Bank v. Export–Import Bank of the United States*, 634 F.Supp. 195, 201 (E.D.Penn.1986). Thus, in order to state a cause of action based on estoppel against HUD, plaintiffs must allege more than mere negligence, delay or inaction. *Fano v. O'Neil*, 806 F.2d 1262, 1265 (5th Cir. 1987). Although they do not have to use the words "affirmative misconduct," plaintiffs must allege willfulness, wantonness and recklessness to state such a claim. *Id.* at 1266. In addition, plaintiffs must enumerate adequate factual underpinnings for consideration of the applicability of estoppel; mere conclusions and puffery are not sufficient. *Newport Nat'l Bank v. United States*, 556 F.Supp. 94, 97 (D.R.I.1983).[6]

■ Assuming, without deciding, that plaintiffs reasonably relied on HUD's conduct in setting wage rates to their detriment, plaintiffs have not alleged any conduct on the part of HUD which could be construed as wanton or reckless. Pursuant to 42 U.S.C. section 1437j(a)

[a]ny contract for loans, contributions, sale, or lease pursuant to this chapter ... shall also contain a provision that *not less than* the wages prevailing in the locality, as predetermined by the Secretary of Labor pursuant to the Davis–Bacon Act, shall be paid to all laborers and mechanics employed in the develop-

---

**4.** In their proposed second amended complaint, plaintiffs also allege that this court has jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. section 2201. Plaintiffs contention is without merit, however, because this statute does not provide an independent basis for jurisdiction. *See St. Vincent's Hosp. & Medical Center v. Division of Human Rights*, 553 F.Supp. 375, 377 (S.D.N.Y.1982) (fact that complaint seeks a declaratory judgment under 28 U.S.C. § 2201 does not create subject matter jurisdiction).

In addition, plaintiffs claim that HUD has waived its sovereign immunity under 5 U.S.C. section 702 (Administrative Procedures Act) and 28 U.S.C. section 1346(a)(2) (Tucker Act). Plaintiffs' reliance on these two statutes is misplaced. The United States has waived its immunity to suit pursuant to the Administrative Procedures Act only for actions in which the relief sought is other than money damages. Here, plaintiffs seek money damages from HUD because they request that HUD reimburse them for any judgment they must pay as a result of an adverse decision in a state court proceeding. Likewise, the Tucker Act does not provide a waiver of sovereign immunity in this case. That section applies only to actions in which plaintiffs seek less than $10,000 in damages. Here, on the other hand, plaintiffs seek to recover in excess of $118,000.

**5.** Initially HUD addressed a variety of scenarios under which plaintiffs might be trying to state a claim. In opposition to this motion, however, the only basis that plaintiffs assert for their claim is the doctrine of equitable estoppel. Therefore, this is the only legal basis which the court will consider in its disposition of this motion.

**6.** In their proposed second amended complaint, plaintiffs state that any damages they may incur will have been caused solely by the intentional actions and reckless misconduct of HUD. *See* Plaintiffs' Proposed Second Amended Complaint at ¶ 36. However, nowhere in this proposed complaint do plaintiffs allege any facts which would support such a conclusory allegation.

ment of the project involved ..., and the Secretary shall require certification as to compliance with the provisions of this section prior to making any payment under such contract.

42 U.S.C.A. 1437j(a) (West 1991 Supp.) (emphasis added). Although the court must, for purposes of a motion to dismiss, look only to the complaint and accept plaintiffs' allegations as true, the court is unable to find any statement in the complaint which alleges any wrongdoing on the part of HUD. In fact, it would appear from the complaint that plaintiffs concede that HUD did exactly what it was required to do by law. For example, plaintiffs state that HUD approved the project specifications which contained the language of 42 U.S.C. section 1437j(a). *See* Plaintiffs' Amended Complaint at ¶¶ 11, 29. The inclusion of this federal prevailing wage rate determination, as plaintiffs point out, is required by Federal Law and Regulations. *See* Plaintiffs' Amended Complaint at ¶ 30.

The only paragraph in the entire complaint which possibly could be construed as an allegation of wrongdoing on HUD's part states that "HUD has steadfastly maintained that plaintiffs acted correctly in paying the federally determined wage rates specified in the construction contract and has expressed its willingness to support plaintiffs' position." *See* Plaintiffs' Amended Complaint at ¶ 33. However, these statements have nothing to do with HUD's conduct in setting wage rate determinations. Nevertheless, plaintiffs argue that because HUD insisted that the construction contract include the language of 42 U.S.C. section 1437, HUD is responsible, and should be made to reimburse plaintiffs, for any additional wages for which the State finds plaintiffs responsible. *See* Plaintiffs' Amended Complaint at ¶¶ 36, 37.

Plaintiffs rely on three cases to support their argument for equitable estoppel. All of these cases, however, are distinguishable on their facts. Moreover, in two of the three cases, the courts held that the Government was not subject to estoppel. In *Heckler*, a health care provider sued the Government challenging the Government's attempted recoupment of overpayments made under its medicare cost reimbursement procedures. The issue before the Court was "whether the Government is estopped from recovering those funds because respondent [health care provider] relied on the express authorization of a responsible Government agent in making the expenditures." *Id.* 104 S.Ct. at 2220. In *Heckler*, a health care provider had sought advice about whether certain expenses were reimbursable under the medicare regulations. Based on the advice that they were, it sought and received the appropriate reimbursement. Subsequently, it was determined that this advice had been incorrect; and the Government sought to recoup this money. Even though the Court found that the health care provider would be adversely affected by the Government's recoupment of funds that it had already received and spent, the Court held that the Government was not estopped from recouping these amounts. *Id.* at 2225. The Court based its decision in part on its belief that "[t]hose who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law." *Id.*

In the present case, as in *Heckler*, there is no doubt that plaintiffs will be adversely affected if they are forced to pay additional wages to their employees. However, this adverse effect is not the result of any affirmative misconduct on the part of HUD. Plaintiffs do not allege that HUD advised them that they were not required to pay state wages should such wages turn out to be higher than the federal wage determination. In fact, the language of the contract only required that plaintiffs pay wages "*no less* than the salaries or wages prevailing in the locality of the project, as predetermined by the Secretary of Labor of the United States pursuant to the Davis–Bacon Act ..." *See* Plaintiffs' Amended Complaint at ¶ 11. Moreover, plaintiffs cannot blame HUD for their ignorance of state law. They, like anyone else, are expected to know the law and to act accordingly. It was plaintiffs' responsibility, not HUD's, to determine the appropriate wage scale under both state and feder-

al law and to pay their employees accordingly. Furthermore, unlike the plaintiff in *Heckler*, FHM and Hoot Owl received no bad advice. If the Court was unwilling to allow the plaintiff in *Heckler* to estop the Government from recouping funds to which plaintiff claimed an entitlement based on bad advice, then *a fortiori*, plaintiffs in this case cannot expect this court to allow them to estop the Government from denying responsibility for the payment of additional wages when no bad advice was given.

Plaintiffs also rely on *Cook v. Pension Benefit Guar. Corp.*, 652 F.Supp. 1085 (S.D.N.Y.1987), to support their claim for equitable estoppel. The plaintiffs in *Cook* were trustees of a local union who sued the defendant, a wholly owned government corporation, which guaranteed payment of pension benefits to certain retired employees. *Id.* at 1086. Plaintiffs claimed that they were entitled to recovery against the Government based on a theory of equitable estoppel because they relied on an initial determination by the defendant that it would guarantee benefits to the retirees of two warehouses. This initial determination caused the plaintiffs to incur approximately $3,000,000 in obligations for which they believed defendant would reimburse them. Plaintiffs argued that because their reliance was reasonable, defendant must reimburse them for that amount. *Id.*

After a review of both Supreme Court and Second Circuit decisions, the court concluded that "in order to raise an estoppel against the government the private litigant must demonstrate that the government has engaged in 'affirmative misconduct' or that a decision in the government's favor would work a manifest injustice." *Id.* at 1090. Furthermore, the court went on to say that the Second Circuit had refused to apply the doctrine against the Government where it found *no government misconduct. Cook*, 652 F.Supp. at 1090 (emphasis added) (citing *Goldberg v. Weinberger*, 546 F.2d 477 (2d Cir.1976) (Government not estopped from denying plaintiff widow's benefits when she married before the age of 60 in reliance on mistaken representations of government agent that her widow's bene-

fits would not terminate); *United States v. RePass*, 688 F.2d 154, 158 (2d Cir.1982) (equitable estoppel not available against the Government "except in the most serious of circumstances.")). Therefore, in accordance with these prior decisions, the court concluded that plaintiffs could not rely on the doctrine of equitable estoppel because "[a] good faith, albeit erroneous, decision is not equivalent to affirmative misconduct." *Id.* at 1091. Again, in this case as in *Cook*, plaintiffs have alleged no government misconduct. They received no bad advice and HUD did no more, nor less, than it was required to do under the law. Accordingly, absent any allegation of HUD's misconduct, even assuming a claim of bad advice, plaintiffs cannot sustain their claim for estoppel.

Finally, plaintiffs rely on *Corniel–Rodriguez v. INS*, 532 F.2d 301, 306 (2d Cir. 1976), to support their argument for estoppel. In that case, the plaintiff had received an immigrant visa as the unmarried child of a United States resident. At the time she received her visa, the American consul failed to warn her, as he was required to do pursuant to official State Department regulations, that her visa would automatically become invalid if she married before arriving in the United States. Ignorant of this rule, plaintiff married three days prior to her departure; and INS demanded her deportation. *Id.* at 302. The Second Circuit held that "[t]he official's noncompliance with an affirmatively required procedure, obviously designed to protect individuals in [plaintiff's] precise situation, was ... an act of affirmative misconduct ..." *Id.* at 306–07. On the basis of these facts, the court held that "[t]o permit [plaintiff] to be deported ... would be to sanction a manifest injustice occasioned by the Government's own failure." *Corniel–Rodriguez*, 532 F.2d at 307.

*Corniel–Rodriguez* is the only case plaintiffs cite in which the court found an affirmative act of wrong doing on the part of a government employee—failure to follow an established procedure. In this case, plaintiffs point to no such failure. In fact, just the opposite is true. In their com-

plaint, plaintiffs state that HUD's inclusion of a Federal Wage Determination was required by federal law and regulations. *See* Plaintiffs' Amended Complaint at ¶ 30. Thus, it would appear that plaintiffs are attempting to argue that because HUD followed statutory procedures, it acted wantonly and recklessly. Furthermore, it appears that plaintiffs want this court to hold that because plaintiffs may be adversely affected by this admittedly legal conduct, they have stated a claim pursuant to the doctrine of equitable estoppel. After reviewing the applicable case law, however, it is beyond this court's comprehension how plaintiffs expect that they can support such a proposition.

As each of these cases point out, in the absence of affirmative misconduct, plaintiffs cannot rely on the doctrine of equitable estoppel as the basis for a claim against the Government. Having alleged no misconduct on the part of HUD, and having in fact admitted that what HUD did was required by federal law, plaintiffs have failed to state a claim upon which relief can be granted. Accordingly, the court grants HUD's motion to dismiss plaintiffs' fourth cause of action pursuant to Fed.R.Civ.P. 12(b)(6).

## II. Plaintiffs' First Three Causes of Action

In their first three causes of action, all of which are unaltered by their proposed second amended complaint, plaintiffs seek no relief against HUD. Nevertheless, they argue that HUD's motion to dismiss these causes of action should be denied because HUD is an indispensable party within the meaning of Fed.R.Civ.P. 19. Pursuant to Rule 19 a party shall be joined as a party in the action if

(1) in the person's absence complete relief cannot be accorded among those already parties, or

(2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may

(i) as a practical matter impair or impede the person's ability to protect that interest or

(ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest ...

Fed.R.Civ.P. 19(a) (1991 Rev.Ed.).

In support of their claim that HUD is an indispensable party, plaintiffs cite *Boles v. Greenville Hous. Auth.*, 468 F.2d 476 (6th Cir.1972), and *Gardner v. Nashville Hous. Auth.*, 468 F.2d 480 (6th Cir.1972). Although in both of these cases, the Sixth Circuit found that HUD was an indispensable party, plaintiffs reliance on these decisions is misplaced. In *Boles*, the plaintiff argued that an urban renewal plan, adopted by HUD, violated HUD guidelines and the Urban Renewal Act. Since resolution of this question involved HUD's interpretation of its own guidelines, the Sixth Circuit found that HUD was an indispensable party. This decision was based partly on the court's unwillingness to find that HUD had misinterpreted its own guidelines without giving HUD an opportunity to defend itself. *Boles*, 468 F.2d at 479. Likewise, the holding in *Gardner* is not dispositive of this case. In *Gardner*, plaintiffs attacked HUD's determination that a local urban renewal plan complied with federal requirements. The court found that HUD was an indispensable party because plaintiffs were challenging the legality of HUD's action under the statute. *Gardner*, 468 F.2d at 481.

In the present action, plaintiffs do not allege that HUD misinterpreted or violated its own regulations or guidelines. Nor are they challenging the legality of HUD's actions under a statute. In fact, they concede that what HUD did was required by statute. In effect, it would appear that the only "wrongdoer" in this action, if one exists, is the New York State Department of

Labor which plaintiffs contend violated federal law by requiring that plaintiffs pay their employees at the higher state wage rate. Under these circumstances, HUD can hardly be considered an indispensable party.

Moreover, a case not mentioned by plaintiffs but very much on point is *Arthur v. Starrett City Assocs.*, 89 F.R.D. 542 (E.D.N.Y.1981). *Arthur* was a civil rights action in which plaintiffs claimed that they were denied housing in a HUD-approved housing complex in a discriminatory manner. Defendants argued that HUD was an indispensable party to the suit because it had approved their Affirmative Fair Housing Marketing Plan and an adverse decision would subject them to HUD penalties. The court held that defendants' "largely unsupported assertion that HUD's apparently unambiguous policy is otherwise is insufficient to compel HUD's joinder under Rule 19." *Id.* at 546. Moreover, the court found that because the complaint explicitly disclaimed any direct challenge to HUD regulations or policy, it was not a case where complete relief could not be afforded in the absence of HUD. *Id.* at 546.

The facts as alleged by plaintiffs in the present case are very similar to those in *Arthur.* Plaintiffs do not challenge HUD policy or HUD regulations. In fact, they seek to have this court find that these federal statutes preempt state law. Furthermore, HUD has no significant interest in this lawsuit. The resolution of the dispute centers around a determination of whether or not a federal statute and the regulations promulgated thereunder preempt state law. This is a legal determination which this court can make without the continued presence of HUD in this lawsuit. As the court in *Arthur* stated, "the mere fact that [a party] may defend on the ground that federal law or regulations either encourage or require the complained of practices does not mean that the action cannot go forward without HUD." *Id.* at 546. Moreover, there is no danger of multiple litigation or inconsistent lawsuits. Plaintiffs seek no recovery from HUD in their first three causes of action, and there is no possibility that they will incur an obligation to anyone but the New York State Department of Labor. Therefore, under these circumstances, the court concludes that HUD is not an indispensable party within the meaning of Fed.R.Civ.P. 19. Accordingly, the court grants HUD's motion to dismiss these first three causes of action as to HUD for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).

### III. Plaintiffs' Cross-motion to Amend Their Complaint

Plaintiffs have cross-moved to file a second amended complaint. Plaintiffs contend that they seek to amend their complaint "to clarify their claims and address the issues raised by defendant HUD." *See* Plaintiffs' Memorandum of Law at 4. The court has carefully reviewed plaintiffs' proposed second amended complaint and has addressed the proposed changes, where appropriate, in the preceding discussion. The court has found nothing in this proposed complaint which would prevent it from granting HUD's motion for dismissal. Accordingly, the court denies plaintiffs' motion to file a second amended complaint pursuant to Fed.R.Civ.P. 15.

### CONCLUSION

For the reasons stated above, the court concludes that it has subject matter jurisdiction to hear this action pursuant to 28 U.S.C. section 1331 and 42 U.S.C. section 1437 and that HUD has waived its sovereign immunity pursuant to 42 U.S.C. section 1404a. Nevertheless, the court concludes that plaintiffs have failed to state a claim upon which relief can be granted. Accordingly, the court grants HUD's motion to dismiss plaintiffs' fourth cause of action pursuant to Fed.R.Civ.P. 12(b)(6). In addition, the court concludes that HUD is not an indispensable party within the meaning of Fed.R.Civ.P. 19 and therefore grants HUD's motion to dismiss plaintiffs' first three causes of action as to HUD pursuant to Fed.R.Civ.P. 12(b)(6).

Finally, because plaintiffs' proposed second amended complaint would not cure the failings in their amended complaint nor

change the legal analysis pertinent to HUD's motion to dismiss, the court denies plaintiffs' cross-motion to file a second amended complaint pursuant to Fed. R.Civ.P. 15.

IT IS SO ORDERED.