**Regina CHESIR and Gloria Johnson, Plaintiffs,**

v.

**HOUSING AUTHORITY OF the CITY OF MILWAUKEE, a public body corporate and politic, and their agents, employees, successors in office, assistants, and all others acting in concert or cooperation with them or at their direction or under their control, Defendant.**

**Civ. A. No. 90–C–845.**

United States District Court, E.D. Wisconsin.

Sept. 14, 1992.

Janet B. Roberts, Legal Action of Wisconsin, Inc., Milwaukee, Wis., for plaintiffs.

Hazel Mosley, Asst. City Atty., Milwaukee, Wis., for defendant.

## ORDER

TERENCE T. EVANS, Chief Judge.

Regina Chesir and Gloria Johnson brought this case pursuant to 42 U.S.C. § 1983, claiming that the defendant has violated their rights under federal law in its administration of the rent assistance program for the city of Milwaukee. Another plaintiff, Betty Covington, has already settled her claims. In April 1991, the plaintiffs filed a motion for a preliminary injunction. After an extension of time, on July 31, 1991, the Housing Authority of the City of Milwaukee (HACM) filed a motion for summary judgment and a consolidated brief in support of summary judgment and in opposition to the motion for preliminary injunction. After further extensions of time, in October 1991, the plaintiffs withdrew their motion for preliminary relief and filed a combined brief opposing summary judgment and supporting their own

partial summary judgment motion. The cross-motions for summary judgment are ready for consideration.

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c). The party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact, *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983), and the facts must be viewed in the light most favorable to the nonmoving party, *Reardon v. Wroan*, 811 F.2d 1025, 1027 (7th Cir.1987). When the parties have both moved for summary judgment, the facts are usually undisputed, as is true in this case.

Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437 *et seq.*, created the rent assistance program (RAP) to be run and regulated by the Department of Housing and Urban Development (HUD). HUD contracts with local public housing authorities (PHAs), such as HACM, to make money available for the payment of rent on behalf of a specified number of low income families.

In order to participate in the program, a family must apply to HACM for admission. Those admitted receive "certificates of participation" or "vouchers." A certificate permits the holder to search for a suitable unit within the state; the rental payment is negotiated by the RAP. A voucher allows location flexibility; it can be transferred to other states around the country. With a voucher, the RAP determines the subsidy to be paid, but the owner and applicant negotiate the actual rent. A limited number of certificates or vouchers are issued, and other applicants are placed on a waiting list. At the present time, approximately 18,000 families fill the waiting list.

The certificate or voucher allows a family to find housing and to submit a proposed lease to HACM. HACM must then determine whether to approve the lease, depending on the condition of the proposed housing. If the lease is approved, appropriate documents are signed and HACM pays a percentage of the rent due to the landlord.

The present issue involves the duration of the voucher. Vouchers and certificates are treated identically in regard to expiration. Once a certificate or voucher is issued, the family has an initial 60 days to find a suitable unit and submit a completed request for lease approval. 24 C.F.R. §§ 882.209(d)(1), 887.165(a). If a family cannot find a suitable unit within that time, the family may request up to two extensions for a total of 60 additional days.

Ms. Chesir, a low income, single mother of two children, had been on the waiting list for rent assistance. She was issued a voucher on March 31, 1988, with an expiration date of May 29, 1988. Ms. Chesir made some arrangements to use her voucher in Atlanta. On May 27, 1988, she asked for and received an extension of the voucher until June 28, 1988. After searching unsuccessfully for a home in Atlanta, she returned to Milwaukee and decided to use the voucher here. On June 28, 1988, Ms. Chesir was ill and unable to go to the RAP office to obtain her final 30–day extension. On June 29, 1988, she went to the RAP office, explained that she had been ill the day before, and requested an extension of her voucher. HACM refused to grant the extension on the grounds that her voucher had expired the day before, and she was informed that she was terminated from the program. At a hearing on March 29, 1989, she explained her efforts to obtain housing in Atlanta and presented a doctor's statement verifying her illness. The hearing examiner issued a written decision dated April 17, 1989, upholding the termination on the grounds that the program acted in accordance with regulations.

Ms. Johnson had received her first housing voucher in 1987 and was accepted as a participant. Because the owner of her home failed to make all necessary repairs, HACM informed Ms. Johnson that she should search for another unit. She was issued a new voucher on September 20, 1988, with an expiration date of Friday, November 18, 1988. On Saturday, November 19, she and her prospective landlord

completed the request for lease approval forms. Ms. Johnson went to the RAP office on Monday, November 21, 1988, to submit her documents. She was informed that her voucher had expired, that her forms could not be accepted, and that she was terminated from the program. An informal hearing was conducted, but the termination was upheld in April 1989 on the grounds that the program acted in accordance with federal law, HUD regulations, and program rules.

In their motion for partial summary judgment, the plaintiffs seek only the declaratory and injunctive relief requested in the complaint, specifically:

1. A declaratory judgment by this Court that:

   a) the practice and procedure of the defendant in counting the day of issuance of a voucher or certificate of family participation as the first effective day of the time limit violates the plaintiffs' rights under the U.S. Housing Act of 1937, as amended, 42 U.S.C. § 1437f and the HUD regulations implementing that act at 24 C.F.R. §§ 882.209(d) and 887.165.

   b) the defendant's policy and practice of refusing [to] exercise discretion to extend a certificate or voucher, and of refusing to assist the family in finding a suitable unit, when the certificate or voucher expires, violates the plaintiffs' rights under the HUD regulations that implement the U.S. Housing Act, at 24 C.F.R. §§ 882.209(b) and 887.165;

2. A permanent injunction enjoining the defendant from continuing to refuse to extend the plaintiffs' Section 8 vouchers for the balance of time that is appropriate for each plaintiff under the regulations.

HACM, in its motion for summary judgment, believes that the plaintiffs have not stated any claim under section 1983, that its policies and practices are in accord with the housing act and HUD regulations, and, as a final matter, that HUD is a necessary and indispensable party, requiring dismissal in HUD's absence.

*Right and Remedy*

This case, as previously noted, is brought pursuant to 42 U.S.C. § 1983. The plaintiffs allege a deprivation of their rights guaranteed by federal law. HACM, in its motion for summary judgment, argues that the case should be dismissed because there is no protected right that plaintiffs have been denied, and even if there is, it has not been denied through any policy of HACM.

In *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Supreme Court held that section 1983 was available to enforce violations of federal statutes by state agents. Certain exceptions to that principle have been carved out. *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), and *Middlesex County Sewerage Authority v. National Sea Clammer Ass'n*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), recognized two exceptions to the application of section 1983 to remedy statutory violations: where Congress has foreclosed such enforcement in the statute itself and where the statute does not create enforceable rights, privileges, or immunities within the meaning of section 1983.

The issue in *Wright v. City of Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987), was whether the Brooke Amendment to the Housing Act of 1937 could provide the basis for a section 1983 suit. The Court concluded that it could: Congress did not preclude a section 1983 suit and there was found to be no merit to the argument that the relevant portion of the amendment was too vague to confer on tenants an enforceable "right" for section 1983 purposes. Nothing in the housing act or the Brooke amendment evidenced congressional intent to preclude those petitioners' section 1983 claim. 479 U.S. at 429, 107 S.Ct. at 773.

In *Simmons v. Drew*, 716 F.2d 1160 (7th Cir.1983), the court concluded that the right to participate in the rent assistance program, which is conferred by the certificate of family participation, creates a property interest:

[I]t is plain that just as job tenure is a species of property protected by the Fourteenth Amendment, ... so too is "program tenure," the right of certificate holders to participate in a rent assistance program by seeking out persons willing and able to rent them housing pursuant to the rules of the program.

716 F.2d at 1162 (citation omitted).

■ Relying particularly on *Wright* and *Simmons*, I find that the regulation provides an enforceable right as required for a suit pursuant to section 1983. *Franklin v. Housing Authority of the City of Milwaukee*, No. 91–C–418, 1992 WL 328936 (E.D.Wis. July 20, 1992); *see Holly v. Housing Authority of New Orleans*, 684 F.Supp. 1363, 1366–1367 (E.D.La.1988). Until the certificate or voucher expires, the family has a property right to continued participation in the program. 716 F.2d at 1162.

■ Municipalities and other local government units can be liable under section 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. New York Dept. of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). By contending that their vouchers were wrongfully terminated due to HACM policies, the plaintiffs have stated an actionable claim.

■ HACM also argues that the plaintiffs cannot maintain the section 1983 action because they have not exhausted their state common law *certiorari* remedies. The existence of state administrative remedies does not ordinarily foreclose resort to section 1983. 479 U.S. at 427–428, 107 S.Ct. at 772–773. State *certiorari* proceedings are not part of the administrative process. And, in any case, having an administrative post-hearing decision satisfied any arguably applicable exhaustion requirement. *See, e.g., Holly*, 684 F.Supp. at 1365.

### Required Parties

■ HACM argues that HUD is a necessary party to this action, speculating that if the plaintiffs win the declaratory issues HUD will have to alter how it enforces the regulations or HACM could be subject to inconsistent obligations, and that if HACM is ultimately found monetarily liable to the plaintiffs HUD might not authorize it to pay damages.

In regard to the declaratory or injunctive portion of the case, I find HACM's contentions to be without merit. Ms. Chesir and Ms. Johnson have no dispute with HUD regulations or HUD actions. They instead have challenged HACM's interpretation of HUD regulations. If the plaintiffs prevail, HUD's regulations and responsibilities will not be altered. HACM's interpretation and procedures under the regulations are all that must change.

The joinder issue is more complicated in regard to damages. HACM operates the rent assistance program with funds given by HUD under an annual contributions contract (ACC). HACM is prohibited from making any expenditures of program funds except those in accordance with the operating budget approved by HUD. ACC, part II § 2.4. If HACM fails to comply with the ACC obligations, HUD may reduce its annual contribution. ACC, part II § 2.3. HACM argues that because any potential damages from this case were not included in the current ACC, it cannot pay an award without HUD's approval, thus HUD must be joined or the case dismissed in HUD's absence.

HACM's contentions on this point would have credence if HACM's only funding came from HUD. Such is not the case. The city of Milwaukee, who represents HACM in this action, can donate or lend money to HACM. Wis.Stat. § 66.404(2). HACM itself can buy and sell land, collect rents, invest funds, and issue bonds to support itself and its projects. Wis.Stat. § 66.-40. In short, HACM, the party at fault if fault is found, should have adequate funds of its own to satisfy any judgment. If HACM wishes any retroactive benefits payments to be covered by HUD, it can deal with HUD itself or present the costs for its next ACC.

I note in passing that a few other courts have found HUD to be an unnecessary party in section 1983 housing cases. Although the situations in these cases were not exactly like those before me today, they also lead to my conclusion that HUD's joinder is not required. *See, e.g., FHM Constructors v. Canton Housing Authority,* 779 F.Supp. 677, 685–686 (N.D.N.Y. 1992) (HUD not indispensible when no allegation that HUD misinterpreted or violated its own regulations or guidelines); *Arthur v. Starrett City Associates,* 89 F.R.D. 542 (E.D.N.Y.1981) (HUD not necessary where no direct challenge to HUD regulations or policy, even though HUD had to approve marketing plan at issue); *cf. Simmons v. Drew* (HUD not a party; pretermination hearing required for RAP participants if no retroactive benefits available) (since Ms. Chesir and Ms. Johnson had posttermination hearings after *Simmons,* HACM must have believed that retroactive benefits were available). *But see Lopez v. Arraras,* 606 F.2d 347 (1st Cir.1979) (dicta that HUD's absence may impair its interest re: funding of Puerto Rico housing authority, but actually joined under rule 19(a) to avoid dismissal pursuant to eleventh amendment). The case that HACM cites to support joinder of HUD is inapposite to their argument. In *Tinsley v. Kemp,* 750 F.Supp. 1001 (W.D.Mo.1990), HUD was not a defendant for the section 1983 claim at all. Its argument, rejected by the court, that an adequate remedy was available against the Housing Authority of Kansas City alone, was merely part of its contention that the plaintiffs failed to state a claim under section 18 of the 1937 housing act, 42 U.S.C. § 1437p, which involves HUD approval for housing demolitions.

### Rules and Regulations

Ms. Chesir and Ms. Johnson allege that HACM has violated the HUD regulations set forth at 24 C.F.R. §§ 887.165 and 882.-209(d) by not giving voucher or certificate holders a full 60 days within which they must secure a unit and by automatically terminating the plaintiffs rather than considering them for extensions. The regulation setting forth the time restrictions on vouchers provides:

**§ 887.165   Term of the housing voucher.**

(a) *Initial term.* The initial term of a housing voucher is 60 days.

(b) *Extension of term.* The PHA has the discretion to extend the term of a housing voucher one or more times for a total of not more than 60 additional days (for a total term of not more than 120 days). In deciding whether or not to extend the housing voucher, the PHA must consider the following:

(1) What kind of efforts the family has made to find a suitable dwelling; and

(2) Whether there is a reasonable possibility that the family may, with the additional advice or assistance, if any, find a suitable unit.

(c) *Interchangeability.* If the housing voucher was issued in exchange for a certificate (see § 887.155(a)(1)(iv)), the initial term and the extended term, if applicable, are measured from the date the certificate was issued.

(d) *Submitting request for lease approval.* The family must submit a request for lease approval to the PHA during the term of the housing voucher.

As HACM does not dispute that certificates and vouchers are treated identically in regard to length and expiration, I set forth the pertinent part of the related certificate regulation, also:

(d) *Expiration and extension of Certificate.* (1) The Certificate of Family Participation shall expire at the end of 60 days unless within that time the Family submits a Request for Lease Approval.

(2) If a Certificate expires or is about to expire, a Family may submit the Certificate to the PHA with a request for an extension. The PHA shall review with the Family the efforts it has made to find a suitable dwelling unit and the problems it has encountered and shall determine what advice or assistance might be helpful. If the PHA believes that there is a reasonable possibility that the Family may, with the additional advice or assistance, if any, find a suitable unit, the

PHA may grant one or more extensions not to exceed a total of 60 days. Expiration of a Certificate shall not preclude the Family from filing a new application for another certificate.

§ 882.209(d).

HUD expounds on certificate extensions in its handbook to PHAs, indicating that if a family is unable to find an acceptable unit within 60 days and requests an extension, the PHA should consider other factors such as extenuating circumstances that affected the family's ability to locate a unit during the initial period and whether the family has submitted previous proposed leases that were not approved. HUD Handbook 7420.7, ¶ 4–13a. HUD also indicates that if the certificate "expires at the end of the initial 60–day term without an extension or if it expires after any additional term requested and approved by the PHA, the family may reapply for the program if they so desire...." HUD Handbook 7420.7, ¶ 4–13b.

Before October of 1989, the HACM's written policy relating to extensions and expirations of vouchers as contained in its policy and procedure manual provided as follows:

I. EXTENSIONS

A. If an applicant/participant has been unable to locate a suitable unit, they may request an extension of the Certificate of Family Participation.

B. When a request for an extension is made, the Certification Specialist will refer the applicant/participant to the Management Administrative Assistant II. Only the Management Administrative Assistant II (or the Certification Specialist II, or the Program Manager, in the absence of the Management Administrative Assistant II) may extend a Certificate.

C. The Certification Specialist II will review the file to determine if an extension will be granted. Consideration will be given to: attempts to locate a suitable unit, extenuating circumstances such as building repairs on the unit or medical reasons, and, if it is a participant, whether he/she is certifying in place.

D. Extensions will be given for up to 30 days at a time, and a Certificate of Family Participation can only be extended for up to 60 days beyond the original expiration date.

. . . .

II. EXPIRATION OF CERTIFICATES

A. When an *applicant's* Certificate has expired, and the applicant has not submitted a Request for Lease Approval, or does not have an approved unit or an extension on the Certificate, then the Certification Specialist will terminate the applicant. See Procedure 107–02, IX, Certificate Expiration.

B. When a *participant's* Certificate has expired, and the participant has not submitted a Request for Lease Approval, or does not have an approved unit or an extension on the Certificate, then the Certification Specialist will move to terminate the participant for failure to comply with family obligations. See Procedure 107–03/107–04.

Policy and Procedure Manual dated May 1985, at 1–2 of procedure no. 101–04 (emphasis added). Although unwritten, it is undisputed that HACM custom required that extensions be requested in writing or in person.[1] HACM will grant a request for extension or accept a request for lease approval on the next work day if the expiration date falls on a weekend or holiday.

NOTE: May give 30–day extension from issue date of Certificate/Voucher. Additional extension may be given for maximum of 120 days total Certificate/Voucher time.
Policy and Procedure Manual dated October 1989 at C–51. A similar procedure is set forth for applicants to the program.

---

1. These policies were revised in October 1989 and now read, in relevant part:

2. *Certificate/Voucher Extensions*
Participants must request an extension in writing before the expiration date of the Certificate/Voucher. The Certification Supervisor or Administrative Specialist must review extension information and approve extensions.

*Counting the Initial Time Period*

■ Both vouchers and certificates are valid for 60 days, but the regulations never specify a method of counting the days. For several years, HACM has counted the date of issuance of a voucher or certificate as the first day of the initial 60–day term. Affidavit of Ann Oldenburg at 1.[2] The PHAs in Chicago and West Allis also use this same counting method.

Ms. Chesir and Ms. Johnson contend that this method of counting violates the regulations by shortening the time period. They argue that HACM's method effectively provides tenants only 59 actual days to find suitable units, rather than the 60 days to which they are entitled. Since each woman was only one day late in requesting an extension or submitting a proposed lease, the difference in counting was critical.

The plaintiffs concede that the regulations do not specify a method for computing the time. They argue instead that the plain meaning of the regulation's "60 days" is 60 full 24–hour periods. They point to other suggestions that the count should begin on the next date after voucher issuance. For example, section 882.209(d) (emphasis added) states that the certificate will expire "at the *end* of 60 days." The HUD voucher and certificate forms used by HACM provide a blank line for the expiration date with this instruction: "Insert date sixty days *after* Housing Voucher is issued" (emphasis added), which should mean that the date of issuance cannot be counted. Also, excluding the day of issuance comports with the commonly accepted method of counting. The federal rules of civil procedure and the Wisconsin statutes, for instance, both show the commonly accepted method of calculating time; the day of the act that triggers the designated time period is not included in the count. Further, regulations should be interpreted in a manner designed to effectuate their underlying purpose. Since the express purposes of the rent assistance

program, as stated by its creators at 42 U.S.C. § 1437f(a), are to aid low income families to obtain a decent place to live, the regulations must be interpreted to give applicants the maximum amount of time to find a unit. The 59–day term instead of the 60–day term lessens the ability of poor persons to take full advantage of the act.

I, however, agree with HACM that its counting method does not contravene federal law and HUD regulations. No regulation indicates how the days should be counted, and counting the date of issuance as the first day is not such an outrageous interpretation. The voucher holder may very well begin searching for a unit that first afternoon or evening. The HUD forms are not requirements for the PHAs. HUD itself tells the PHAs that they may alter the forms for their own use. Moreover, in regard to the purpose of the housing act, the next person on the waiting list is just as important as the plaintiffs. Giving approved applicants an extra day means one more day the families on the 18,000–long list must wait before becoming eligible.

All in all, although beginning the count on the date following issuance would be acceptable and perhaps more logical, beginning the count on the date of issuance is equally acceptable. HACM's custom of counting the date of issuance is not unfair and not unclear—the expiration date is written on the top of each voucher or certificate. Most importantly, the regulations do not proscribe HACM's policy.

*Extension Policy*

The second prong to the plaintiffs' case is based on their automatic termination from the rent assistance program. Ms. Chesir and Ms. Johnson argue that HACM's policy of refusing to consider a request for an extension unless a written request is submitted prior to the expiration of the certificate is inconsistent with the plain meaning 24 C.F.R. §§ 887.165 and

**2.** I note that this practice of counting the date of issuance is not consistent. The housing voucher attached to Ms. Oldenburg's affidavit as an example of this practice began on February 2, 1988, and expired April 2, 1988. Counted as HACM contends, this voucher was valid for 61 days (1988 was a leap year).

882.209.[3] Section 882.209(d), in particular, requires HACM to consider requests for extensions if a certificate "expires or is about to expire." [4]

It is undisputed that if the final date of the initial term or first extension has passed, HACM does not further consider requests for extension or requests for lease approval. The HACM procedure or custom regarding extensions has consistently required that extensions be requested in writing prior to expiration of the voucher. When admitted to the rent assistance program, both plaintiffs were given briefing packets, which set forth these requirements.

The timing requirements for a request for lease approval are clear. It must be submitted before expiration of the certificate or voucher. 24 C.F.R. §§ 887.165(d); 882.209(d)(1). The timing requirements for extensions, however, are not so clear. Neither of the pertinent HUD regulations states that extensions must be requested before the voucher or certificate expires. The HUD handbook similarly does not require that extension requests be made before the initial term or first extension expires. These provisions do indicate that if the certificate or voucher expires after the initial or extended term without submission of a request for lease approval, the family may reapply.

In its summary judgment brief and its brief opposing summary judgment for plaintiffs, HACM's main argument is that an extension to the initial term of the voucher is completely discretionary under the regulations. Even if the plaintiffs had submitted requests for extensions prior to the expiration, HACM could have denied the requests. According to HACM, the plaintiffs have no right to an extension and so lose as a matter of law. In addition, HACM contends that if a request for lease approval must be submitted before the expiration of the voucher, it follows that extensions must be requested within that time as well.

Ms. Chesir and Ms. Johnson do not dispute that extensions are discretionary, but counter that HACM had the responsibility to at least *consider* the request and decide whether to use its discretion. Automatic termination and the refusal to accept an extension request mean that HACM never even bothers to consider the request, which it must do under the regulations in light of enumerated factors. Applicants and participants do not have the absolute right to receive an extension, but they do have the right to ask for one and have their request considered pursuant to the stated regulatory standards up until 120 total days have expired.

■ Local PHAs like HACM are vested with authority to promulgate rules and regulations to administer the section 8 program under 24 C.F.R. § 882.204(b)(3). Where local policies violate the purpose of the section 8 program and impose criteria in addition to that in the federal statutes and regulations, the local rule must fall. *See, e.g., Ferguson v. Metropolitan Development and Housing Agency*, 485 F.Supp. 517, 524–527 (M.D.Tenn.1980). The plaintiffs contend that HACM's policy has the effect of adding unauthorized criteria for continued participation in the program that the federal regulations do not require.

---

**3.** Although Ms. Johnson attempted to submit a request for lease approval rather than a request for an extension, she had 60 days of extension still possible. If granted an extension, she could have then submitted her proposed lease. Automatic termination from the program, however, prevented any submissions at all. I do note, in addition, that under HACM's own policy, Ms. Johnson, as a participant rather than an applicant, should not have been automatically terminated. The Certification Specialist had to move to terminate her. This issue has not been raised, however.

**4.** HACM asserts that because only vouchers are involved in this case, this language of section 882.209 should be ignored. If vouchers and certificates were treated differently in regard to their periods of validity and extensions, that would be appropriate. Since on these points, vouchers and certificates are treated identically, section 882.209 is properly considered. Because the voucher regulation is silent on when requests for lease approval and requests for extensions must be submitted, the relevant language of the certificate regulation is indeed influential.

I agree with the plaintiffs' position that requests for extensions may be made as long as the 120–day total limit has not expired. The HUD regulations do not imply that extensions, like proposed leases, must be submitted before expiration. The regulatory language points to the opposite conclusion. Like the *Ferguson* case, HACM has imposed additional criteria.

According to HACM's interpretation, the word "expires" in section 882.209(d)(2) can only mean that exact second when HACM closes its office on the date of expiration—that precise moment between "is about to expire" and "has expired." HACM's interpretation essentially strikes the word "expires" from the HUD regulation. That effective deletion is impermissible and results in contravention of the regulation.

To reiterate the regulation covering housing vouchers, 24 C.F.R. § 887.165 (emphasis added):

> In deciding whether or not to extend the housing voucher, the PHA *must* consider the following:
>
> (1) What kind of efforts the family has made to find a suitable dwelling; and
>
> (2) Whether there is a reasonable possibility that the family may, with the additional advice or assistance, if any, find a suitable unit.

The regulation governing certificates similarly requires that the "PHA *shall* review with the family" these same kinds of facts in deciding whether to grant an extension. 24 C.F.R. § 882.209(d)(2) (emphasis added).

HACM's summary termination of benefits when the last day of the initial term or first extension is over ignores the mandate of the words "must" and "shall." The regulations create a mandatory duty to consider requests for extensions in light of those factors, which HACM did not do in this case. HACM's automatic termination not only adds an additional requirement for the plaintiffs, but precedes and precludes HACM's consideration of factors that it must consider.

### Results and Relief

On the cross-motions, summary judgment is GRANTED for HACM and DE-

NIED for the plaintiffs on the 59– versus 60–day issue. Summary judgment for HACM is DENIED in all other respects. Partial summary judgment as requested by the plaintiffs is GRANTED in regard to declaratory relief on the extension issue. Applicants with vouchers that have expired may request extensions up until 120 days have elapsed from initial issuance.

The plaintiffs' request for injunctive relief goes too far, however. Ms. Chesir and Ms. Johnson seek a "permanent injunction enjoining the defendant from continuing to refuse to extend the plaintiffs' Section 8 vouchers for the balance of time that is appropriate for each plaintiff under the regulations." As shown above, the *granting* of an extension is still completely within the discretion of HACM. The plaintiffs have only shown that they are entitled to submit extension requests and have them considered.

IT IS THEREFORE ORDERED that HACM put Ms. Chesir and Ms. Johnson in the positions they were in at the time they were terminated from the program. In other words, HACM must immediately accept and consider Ms. Chesir's already-tendered request for an extension in the same manner as they have previously considered requests made before the expiration date. She will have 29 days remaining of her 120 total voucher term. Ms. Johnson has 57 days remaining (the difference between Friday, November 18, 1988, and Monday, November 21 should be deemed lapsed), within which she may request an extension and, if granted, then submit a request for lease approval.

To discuss further issues in the case, and hopefully a settlement of those issues, a status conference will be conducted on October 27, 1992, at 8:30 a.m.

SO ORDERED.