JACKSON SQUARE ASSOCIATES, a
New York Limited Partnership,
Plaintiff,

v.

UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOP-
MENT, BUFFALO OFFICE—REGION
II, Defendant.

No. 88–CV–859C.

United States District Court,
W.D. New York.

Aug. 10, 1992.

John J. Phelan, Buffalo, N.Y., for plaintiff.

Dennis C. Vacco, U.S. Atty. (Susan W. Schoepperle, Asst. U.S. Atty., of counsel), Buffalo, N.Y., for defendant.

CURTIN, District Judge.

## BACKGROUND

This case stems from a dispute over the amount of payments due under a Housing Assistance Payments ("HAP") contract between plaintiff, Jackson Square Associates ("Jackson Square"), and defendant, the United States Department of Housing and Urban Development ("HUD"). Several motions are pending. First, plaintiff has moved to strike several affirmative defenses offered by defendant. Item 12. Second, plaintiff has moved to amend its complaint. Item 17. Third, defendant has moved to dismiss the complaint or have the case transferred to the Claims Court, pursuant to 28 U.S.C. § 1631, for lack of subject

matter jurisdiction in this court. After a brief review of the facts, the court will address each motion in turn.

## FACTS

Jackson Square owns a 160–unit low-income housing development in the Town of Amherst, New York. Effective March 13, 1979, Jackson Square entered into a HAP contract with HUD, pursuant to 42 U.S.C. § 1437f, under which HUD agreed to make rental assistance payments to Jackson Square for the development's eligible tenants. *See* Item 17, Exh. 1 (HAP contract). Included within the contract was an allowance for the expected utility expenses of Jackson Square. *Id.* Shortly after commencement of the contract, however, it was determined that a mistake had been made which caused Jackson Square's utility expenses to be greatly underestimated. On July 17, 1979, the Buffalo area office of HUD recommended to the national HUD office that Jackson Square's utility allowance should be adjusted upward by $24 per month, per unit. Item 17, Exh. 2. By letter of August 29, 1979, this requested increase was apparently approved by Lawrence B. Simons, Assistant Secretary for HUD in Washington, D.C. Item 17, Exh. 3. Plaintiff alleges that this adjustment was never made. It seeks damages of several hundred thousand dollars to cover past and future alleged shortfalls. *See* Item 17 (proposed amended complaint).

## DISCUSSION

Plaintiff has moved to strike four of the six affirmative defenses contained in defendant's answer. Item 12. Defendant does not object to having its sixth defense—failure to exhaust administrative remedies—stricken, but opposes the motion for the other three defenses. Item 21, ¶ 6. Plaintiff's motion is denied. *See National Union Fire Ins. Co. of Pittsburgh v. Alexander,* 728 F.Supp. 192, 203 (S.D.N.Y. 1989).

Plaintiff has also moved to file an amended complaint. Item 17. "[L]eave [to amend a complaint] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Ryder Energy Distribution v. Merrill Lynch Commodities,* 748 F.2d 774, 783 (2d Cir.1984). In order to adequately test the merits of plaintiff's complaint, this motion is hereby granted.

That brings the court to the main issue currently before it, *viz.,* whether this court has jurisdiction over plaintiff's amended complaint or whether, under the Tucker Act, 28 U.S.C. § 1346(a)(2), the case must be transferred to the Claims Court. Before proceeding, however, the court cautions that the case law in this area appears to lead toward contradictory conclusions.

Many, if not most, courts have concluded that jurisdiction under the Tucker Act is exclusive in the United States Claims Court, pursuant to 28 U.S.C. § 1346(a)(2), if three conditions are met:

> (1) the action is against the United States;
>
> (2) the action is founded upon the Constitution, federal statute, executive regulation, or government contract; and (3) the action seeks monetary relief in excess of $10,000.

*Amoco Prod. Co. v. Hodel,* 815 F.2d 352, 359 (5th Cir.1987), *cert. denied,* 487 U.S. 1234, 108 S.Ct. 2898, 101 L.Ed.2d 932 (1988). *See United States v. Hohri,* 482 U.S. 64, 66 n. 1, 107 S.Ct. 2246, 2249 n. 1, 96 L.Ed.2d 51 (1987); *Alan Guttmacher Inst. v. McPherson,* 805 F.2d 1088, 1096 (2d Cir.1986); *A.E. Finley & Assoc., Inc. v. United States,* 898 F.2d 1165, 1167 (6th Cir.1990); *Weeks Constr., Inc. v. Oglala Sioux Hous. Auth.,* 797 F.2d 668, 675 (8th Cir.1986); *Hahn v. United States,* 757 F.2d 581, 586 (3d Cir.1985); *Portsmouth Redevelopment & Hous. Auth. v. Pierce,* 706 F.2d 471, 473 (4th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983); *Homewood Corp. v. Kemp,* 786 F.Supp. 1315, 1318–19 (S.D.Ohio 1992); *Carlyle Gardens Co. v. Delaware State Hous. Auth.,* 659 F.Supp. 1300, 1307 (D.Del.1987). *Cf. Tennesee ex rel. Leech v. Dole,* 749 F.2d 331, 335 (6th Cir.1984), *cert. denied,* 472 U.S. 1018, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985) (concluding that Claims

Court jurisdiction was exclusive only for suits "founded on contract" involving more than $10,000). More importantly, for the most part these cases also hold that to satisfy the first condition,

> [i]t is not necessary that the United States be denominated as a party. An action against a federal agency or official will be treated as an action against the sovereign if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or compel it to act."

*Portsmouth Redevelopment & Hous. Auth.*, 706 F.2d at 473 (quoting *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963)). *See also Amoco Prod. Co.*, 815 F.2d at 359; *B.K. Instrument, Inc. v. United States*, 715 F.2d 713, 723–24 (2d Cir.1983). Thus, under this line of analysis, the first inquiry for a district court is to determine the source of funds sought to be recovered by plaintiff in its action. If the judgment sought could be paid out of separate funds in the control of the federal agency sued, the suit would not be against the sovereign. *E.g., Weeks Constr., Inc.*, 797 F.2d at 675 & n. 9; *Industrial Indem. Inc. v. Landrieu*, 615 F.2d 644, 646 (5th Cir.1980); *Marcus Garvey Square, Inc. v. Winston Burnett Constr. Co. of Cal.*, 595 F.2d 1126, 1131 (9th Cir. 1979); *Carlyle Gardens Co.*, 659 F.Supp. at 1304. But if the judgment sought could only come from the public treasury, then the suit must be considered to be against the United States. *E.g., Dugan v. Rank*, 372 U.S. at 620, 83 S.Ct. at 1006; *Amoco Prod. Co.*, 815 F.2d at 359; *Portsmouth Redevelopment & Hous. Auth.*, 706 F.2d at 473. If the suit is determined to be against the United States and the other two conditions are also satisfied, the suit must be dismissed by the district court, or transferred to the Claims Court. *Amoco Prod. Co.*, 815 F.2d at 368; *Portsmouth Redevelopment & Hous. Auth.*, 706 F.2d at 475.

The Second Circuit, in the recent case of *C.H. Sanders Company v. BHAP Housing Development Fund Company*, 903 F.2d 114, 119 (2d Cir.1990), has undertaken an analysis somewhat different from the cases cited above. Under *Sanders*, jurisdiction may be found in a district court if two conditions are satisfied: First, there must be a grant of subject matter jurisdiction; and second, there must be a valid waiver of sovereign immunity. *Id.* at 117. *See also Falls Riverway Realty v. City of Niagara Falls*, 754 F.2d 49, 54 (2d Cir.1985); *S.S. Silberblatt, Inc. v. East Harlem Pilot Block—Bldg. 1 Hous. Dev. Fund Co.*, 608 F.2d 28, 35 (2d Cir.1979); *FHM Constructors, Inc. v. Village of Canton Hous. Auth.*, 779 F.Supp. 677, 680 (N.D.N.Y. 1992); *Lattimore v. Northwest Coop. Homes Ass'n*, 1992 WL 118383 (D.D.C. May 19, 1992); *Ghent v. Lynn*, 392 F.Supp. 879, 880–81 (D.Conn.1975).

The Tucker Act satisfies both requirements with respect to non-tort claims " 'against the United States ... founded ... upon any express or implied contract with the United States.' " *Sanders*, 903 F.2d at 119 (quoting 28 U.S.C. § 1346(a)(2)). The Tucker Act, however, only permits such actions in district court if the amount sought is $10,000 or less. *Id.* Actions may be brought in the Claims Court for any amount. *Id.;* 28 U.S.C. § 1491(a)(1).

■ In *Sanders*, as here, the government argued that these statutory provisions established *exclusive* jurisdiction in the Claims Court for claims exceeding $10,-000. The Second Circuit, however, rejected this argument.

> We hold that an action (regardless of the amount sought) may be commenced under [28 U.S.C.] § 1331 in the district court provided there is an independent waiver of sovereign immunity outside the Tucker Act.

*Sanders*, 903 F.2d at 119. The court explained:

> "Most claimants against the government rely on the Tucker Act for the waiver of sovereign immunity that would otherwise preclude their suits. When such a claimant attempts to sue in a district court ... he encounters the Tucker Act's $10,000 maximum, and his claim therefore fails

as an unconsented suit against the sovereign. Hence it is commonly said that suits against the government for more than $10,000 are in the exclusive jurisdiction of the Court of Claims.... *In fact, the jurisdiction of the Court of Claims is not exclusive; rather, there is rarely any statute available that waives sovereign immunity for suits in the district court, other than the Tucker Act with its $10,000 limit."*

*Id.* (quoting *Ghent v. Lynn,* 392 F.Supp. at 881 (citations omitted)) (emphasis in *Sanders*). *See also Bowen v. Massachusetts,* 487 U.S. 879, 910 n. 48, 108 S.Ct. 2722, 2740 n. 48, 101 L.Ed.2d 749 (1988) (Claims Court jurisdiction is exclusive "only to the extent that Congress has not granted any other court authority to hear the claims that may be decided by the Claims Court."); *Western Sec. Co. v. Derwinski,* 937 F.2d 1276, 1279 (7th Cir.1991) (same). Thus, a district court's first inquiry is not to determine the source of the funds sought by plaintiff, *see supra,* but to determine whether statutes outside the Tucker Act can provide plaintiff with an independent grant of subject matter jurisdiction and a waiver of sovereign immunity. *Sanders,* 903 F.2d at 117. This court will now undertake that inquiry.

■ Plaintiff seeks subject matter jurisdiction under 28 U.S.C. § 1331, which states: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, law, or treaties of the United States." It claims that this action arises under 42 U.S.C. § 1437f, pursuant to which the HAP contract was formed, and federal common law. The court agrees. "Suits to enforce contracts with federal agencies are governed by federal common law ... and as a result arise under federal law for purposes of section 1331." *Derwinski,* 937 F.2d at 1280 (citations omitted). *See FHM Constructors,* 779 F.Supp. at 680–81 (finding subject matter jurisdiction under § 1437 and other statutes).[1] Accordingly, the court concludes that it has subject matter jurisdiction over this suit.

■ That brings me to the question whether HUD has consented to suit in the district court. Plaintiff relies on 42 U.S.C. § 1404a, which states in part: "The Secretary of Housing and Urban Development *may sue and be sued* only with respect to its functions under the United States Housing Act of 1937, as amended [42 U.S.C.A. § 1437 *et seq.*]...." (emphasis added). There is little doubt that plaintiff's suit, which is based on its HAP contract with HUD, is a suit "with respect to [HUD's] functions under" 42 U.S.C. § 1437 *et seq.* Accordingly, the court holds that § 1404a provides a waiver of sovereign immunity permitting plaintiff's suit *against HUD* in this court. At least two courts have drawn an identical conclusion based on § 1404a. *FHM Constructors,* 779 F.Supp. at 681–82; *Lattimore,* 1992 WL 118383.

The above holdings do not, however, end the court's analysis. In fact, they merely bring the court to the juncture that distinguishes the Second Circuit's analysis in *Sanders* from that of most other circuits in the country. In *Sanders,* the court asked *first* whether jurisdiction existed. Having concluded that it did, it reversed the district court's contrary conclusion and remanded for a determination on the merits. *Sanders,* 903 F.2d at 120. The *Sanders'* court then added this critical instruction on remand:

> If the court determines that HUD is liable for the arbitration award, it need not engage in a further analysis of the source of the funds that would be used to satisfy its judgment—i.e., from general Treasury funds or funds within the discretion and control of the Secretary. The court should simply direct the Secretary to satisfy the judgment out of funds that are within his control, assuming, of course, that such funds exist. It is only as to such funds that the Secretary's immunity has been waived. *See F.H.A. v. Burr,* 309 U.S. 242, 250–51 [60 S.Ct. 488, 492–93, 84 L.Ed. 724] (1940); *Silberblatt, supra,* 608 F.2d at 36.

---

1. *But see 1610 Corp. v. Kemp,* 753 F.Supp. 1026, 1030–32 (D.Mass.1991) (concluding that contract action does not arise under federal law for purposes of § 1331 jurisdiction).

*Sanders,* 903 F.2d at 120. *See also Far West Fed. Bank v. Director, Office of Thrift Supervision,* 930 F.2d 883, 890 (Fed. Cir.1991); *Ensign Fin. Corp. v. Federal Deposit Ins. Corp.,* 785 F.Supp. 391, 401 (S.D.N.Y.1992); *FHM Constructors,* 779 F.Supp. at 681. Thus, under *Sanders,* a district court deciding whether jurisdiction exists need never determine the source of funds sought to be recovered by plaintiff in its action; whereas, in most other circuits, this is the first question that is asked. *See, e.g., Amoco Prod. Co.,* 815 F.2d at 359; *Weeks Constr., Inc.,* 797 F.2d at 675 & n. 9; *Portsmouth Redevelopment & Hous. Auth.,* 706 F.2d at 473.

This difference is critical to a determination whether a claim may be brought in district court, or must be brought in the Claims Court. If a court first asks—where are the funds to satisfy judgment likely to come from, the agency or the federal treasury?—and decides the answer is the latter source, then the suit is considered to be against the United States and must be transferred to the Claims Court, because no independent waiver of sovereign immunity exists, outside the Tucker Act, for claims *against the United States.* This is the approach taken by the circuits cited at the beginning of this discussion. *See, e.g., Amoco Prod. Co.,* 815 F.2d at 359; *Weeks Constr., Inc.,* 797 F.2d at 675 & n. 9; *Portsmouth Redevelopment & Hous. Auth.,* 706 F.2d at 473.[2] In *Sanders,* on the other hand, the Second Circuit proceeded on the assumption that the suit was against the Secretary of HUD, not against the United States, and asked whether *HUD* had waived its sovereign immunity. The court concluded that HUD had waived its immunity, and thus held that jurisdiction was proper in the district court. *Sanders,* 903 F.2d at 119–20. The court, however, then noted that the scope of HUD's waiver

of immunity was limited by the extent to which the Secretary could satisfy a judgment "out of funds that are within his control, *assuming, of course, that such funds exist." Id.* at 120 (emphasis added). *See also Silberblatt,* 608 F.2d at 36 ("For a claim to be against the Secretary, and therefore within the scope of the 'sue and be sued clause,' as opposed to a suit against the United States, any judgment for plaintiff must be out of funds in the control of the Secretary as distinguished from general Treasury funds."). If HUD has no funds "severed from Treasury funds and Treasury control," *F.H.A. v. Burr,* 309 U.S. at 250, 60 S.Ct. at 492, plaintiff will simply be unable to collect, even if, ultimately, it is successful in winning a judgment against HUD. *C.H. Sanders Co., Inc. v. BHAP Hous. Dev. Co.,* 910 F.2d 33, 33 (2d Cir.1990); *Far West Fed. Bank,* 930 F.2d at 890; *Ensign Fin. Corp.,* 785 F.Supp. at 401 n. 5.[3]

The distinction offered by *Sanders* also disposes of language in § 1346(a)(2) which divests jurisdiction from a district court for "any civil action or claim against the United States founded upon any express or implied contract with the United States...." 28 U.S.C. § 1346(a)(2). *See Chemung County v. Dole,* 781 F.2d 963, 967 (2d Cir.1986) ("The Contract Disputes Act (CDA) of 1978, 41 U.S.C. § 601 *et seq.* (1982), amended the Tucker Act, 28 U.S.C. § 1491 (1982), and removed district court jurisdiction over actions or claims against the United States, regardless of the amount in controversy, when founded upon an express or implied in fact contract with the federal government."). Here, the suit is against HUD, not the United States. Recovery may be made only against the former entity, not the latter.

For the foregoing reasons, the court holds that it has subject matter jurisdiction,

---

**2.** Indeed, there is precedent in the Second Circuit which would hinge the waiver of sovereign immunity on an initial determination whether the action was against the agency or against the United States. *Falls Riverway Realty,* 754 F.2d at 55–56.

**3.** Although the court takes no position at this time as to whether HUD has access to funds

severed from treasury control, other courts have apparently drawn opposite conclusions on this point. *Compare Portsmouth Redevelopment & Hous. Auth.,* 706 F.2d at 473–74 (holding that there is no separate fund within HUD's control), *with Lattimore,* 1992 WL 118383 (noting plaintiff's identification of a separate HUD fund).

defendant HUD has waived its sovereign immunity, and, pursuant to plaintiff's amended complaint, the suit may proceed in this court.

The court will meet with counsel on August 18, 1992, at 9 a.m. to be advised as to what further steps shall be taken in this litigation.

So ordered.