JACKSON SQUARE ASSOCIATES, a New York Limited Partnership, Plaintiff,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Buffalo Office—Region II, Defendant.

No. 88–CV–859C.

United States District Court, W.D. New York.

Nov. 8, 1994.

---

John J. Phelan, Buffalo, NY, for plaintiff.

Patrick H. NeMoyer, U.S. Atty. (Donald P. Simet, Asst. U.S. Atty., of counsel), Buffalo, NY, for defendant.

## DECISION AND ORDER

CURTIN, District Judge.

### BACKGROUND

This is an action by plaintiff Jackson Square Associates ("Jackson Square")

against defendant United States Department of Housing and Urban Development ("HUD") over the amount of payments due under a Housing Assistance Payments ("HAP") contract entered into by the parties in 1979. Plaintiff brought suit for breach of contract and to enforce payments granted by defendant to Jackson Square in a final agency action on August 29, 1980.[1] Defendant seeks summary judgment to dismiss the action on four separate grounds. HUD claims that: (1) the plaintiff failed to establish the contract alleged in the amended complaint's first cause of action; (2) this court lacks jurisdiction over the second cause of action under the Administrative Procedure Act, 5 U.S.C. § 701 (1977) because HUD's decision to increase rents covered by HAP contracts are committed to agency discretion by law and because an adequate remedy at law exists; (3) plaintiff has failed to show that HUD's administrative action was arbitrary, capricious, or otherwise not in accordance with law; and (4) this action is barred by the statute of limitations.

## FACTS

Jackson Square owns a 160–unit low-income housing development in the Town of Amherst, New York. Effective March 13, 1979, it entered into a HAP contract with HUD, pursuant to 42 U.S.C. § 1437f, under which HUD agreed to make rental assistance payments to Jackson Square for the development's eligible tenants. After Jackson Square commenced performance of the contract, it discovered that the cost of providing hot water to the tenants and the heating of the common areas of the project had been grossly underestimated.

Plaintiff notified HUD of the error; and on February 18, 1980, Boyd Barton of the HUD Buffalo area office replied that the rental assistance payments would be increased by a factor of 1.048 effective March 13, 1980, to make up the shortfall. Item 43. On July 17, 1980, HUD's Buffalo Office wrote its headquarters to ask for authority to increase the HAP contract by $45,098, or 6 percent, to

correct the processing error which led to inadequate coverage of utility costs. Item 46. However, the rents listed in the request document did not include the 4.8 percent annual adjustment for 1980. Item 39, ¶ 1. Assistant Secretary Lawrence B. Simons wrote to Buffalo Area Office Manager James F. Anderson ("Simons letter") on August 29, 1980, approving the suggested 6 percent rent increases. Item 47. In a letter dated October 1, 1980, the Buffalo office informed Jackson Square that a rent adjustment had been approved, amounting to a 6 percent overall increase, or 1.2 percent above the annual adjustment. Item 48.

On October 21, 1980, Jackson Square responded with "shock and dismay" that the approved increases "reflected a 1.2% raise, not the 6% expected...." Item 55. Frank Levin from Jackson Square met with Edward Izsak of the Buffalo HUD office on December 3, 1980, and was shown for the first time the correspondence between Simons and Anderson. From the meeting and the letters, Levin surmised that Jackson Square's rents were increased by a total of 6 percent in 1980, but that this 6 percent included an annual adjustment factor of 4.8 percent. Levin wrote to Izsak on December 11, 1980, and asked that the new approved contract rents reflect separate adjustments for the annual 4.8 percent and the 6 percent to cover the mistake in utility cost estimates. Item 57.

Thereafter, Jackson Square and HUD held several meetings and engaged in correspondence discussing further modification of the HAP contract. On July 25, 1983, HUD informed Jackson Square that plaintiff's claim was being denied after HUD had "reviewed our processing of the rental adjustment ... and found that is [sic] was consistent with Secretary Simon's memo of August 29, 1980." Item 40, Ex. 3. Plaintiff apparently made no further efforts to press its claim until 1988 when, after receipt of some HUD documents under the Freedom of Information Act, it submitted the dispute to HUD's Buffalo office. The Buffalo office denied Jackson

---

**1.** In a previous order, the defendant's motion to dismiss for lack of subject matter jurisdiction was denied, and plaintiff was permitted to

amend its complaint. *Jackson Square v. U.S. Dept. of HUD*, 797 F.Supp. 242 (W.D.N.Y.1992).

Square's claim on March 21, 1988. Plaintiff appealed this decision to the Secretary of HUD, who denied it on May 13, 1988.

Plaintiff claims that its HAP contract was modified by the Simons letter and sues for breach of contract for HUD's failure to follow the modification with increased payments of $45,098 per annum. Since HUD only pays an additional $9 per unit or $17,280 over and above the original contract rent subsidies, plaintiff is faced with an annual shortfall of $15 per unit or $28,800 in utility bills. Item 31 at ¶¶ 10–12, 21. In its second cause of action, plaintiff claims that the Simons letter represented HUD's final agency decision and seeks enforcement of that decision. Jackson Square requests damages of the past annual shortfall plus $28,800 per annum for the balance of the 20–year HAP contract, together with interest and costs. *Id.* at ¶ 14.

## DISCUSSION

### I. Breach of Contract.

■ Plaintiff's first cause of action is for breach of contract. Jackson Square alleges that HUD agreed to a modification of the parties' 1979 HAP contract to address the shortfall created by the error in the estimation of utility costs, as evidenced by Simons' letter. According to the plaintiff, HUD breached this agreement by paying a 1.2 percent increase rather than the 6 percent promised in the alleged contract modification. Items 40 at ¶ 3; 42 at 2.

Defendant urges the court to find that, as a matter of law, no modification of the contract occurred and thus, there was no breach. "Where 'a question of intention is determinable by written agreements, the question is one of the law, appropriately decided ... on a motion for summary judgment.'" *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73 (2d Cir.1989), quoting *Mallad Construction Corp. v. County Fed. Sav. & Loan Ass'n*, 32 N.Y.2d 285, 291, 298, 344 N.Y.S.2d 925, 298 N.E.2d 96 (1973).

■ To establish a contract with the Government, a party must demonstrate: (1) mutual intent to contract, including a communicated offer, acceptance and consideration; (2) lack of ambiguity in the offer and acceptance;

and (3) actual authority on the part of the Government agent. *Solar Turbines v. United States*, 23 Cl.Ct. 142, 150 (Cl.Ct.1991). A valid contract modification must meet the same standard. *Id.* According to defendants, Jackson Square never agreed to the rent level actually approved by HUD, and HUD never accepted the higher rent levels Jackson Square asserts in its complaint. Thus, the contract was not modified by the amount alleged in the first cause of action.

The defendant points out that Simons' letter to Anderson was an internal memorandum, not addressed or initially sent to plaintiff. Further, the letter does not specifically say that the contract will be modified. It merely approves the increases suggested by the Buffalo office pursuant to HUD regulations. The defendant also asserts than even if this constituted an offer to modify the contract, it was not accepted by Jackson Square. On the contrary, the plaintiff reacted with "shock and dismay" that the approved increase was significantly less than anticipated.

Lastly, defendant argues that the HAP contract clearly states that all amendments to the contract must be in writing. Plaintiff has shown no such writing other than the Simons letter, which was merely an internal memo. Since plaintiff has failed to show a communicated offer, acceptance, and consideration, the court must find that the alleged modification of the contract never occurred and thus could not have been breached.

Jackson Square responds that 24 C.F.R. § 880.204(b)(1)(i)(B) (1990) provides that the approval of an increase in rents to correct a processing error must be made by the Assistant Secretary. At deposition, Simons testified that determination contained in his letter of August 29, 1980, was a final agency action. Item 60 at 20. Thus, even though the letter was not provided to the plaintiff until December, Jackson Square maintains that it constituted a modification of the contract.

The evidence on the record is insufficient to conclude that the Simons letter constituted a modification of the contract. The HAP contract unambiguously states at ¶ 1.1g that:

This Contract, including ... exhibits, comprises the entire agreement between the parties hereto with respect to the matters contained herein, and neither party is bound by any representations or agreements of any kind except as contained herein or except agreements entered into in writing which are not inconsistent with this Contract.

Item 31, Ex. 1. The letter is in writing and approves an adjustment of the rents in the original contract, but it is unclear whether these adjustments were ever formally offered or accepted. Simons did not address or send the letter to the plaintiff. Jackson Square reacted with "shock and dismay" when informed by the Buffalo office of the amount of the increase. Nevertheless, the terms of the letter were put into effect. HUD commenced paying Jackson Square the overall 6 percent rent increase which Simons approved, and the plaintiff presumably accepted the added payment without conceding that it was accurate.

In order to withstand summary judgment on its breach of contract claim, however, Jackson Square must demonstrate a factual dispute on the more important question of whether the Simons letter actually approved the level of increase claimed by the plaintiff. Even assuming arguendo that the letter represented a bona fide modification, its clear language does not support the plaintiff's contention that it authorized a 6 percent increase in the rents *over and above* the annual adjustment. The letter states that the adjusted contract rents which would be approved were:

| | | | |
|---|---|---|---|
| $331 | 1BR + | $34 | utility allowance |
| 365 | 2BR + | 42 | |
| 414 | 3BR + | 53 | |
| 451 | 4BR + | 64 | |

These figures accurately represented the increases in rents received by Jackson Square. Therefore, even though the plaintiff has shown a genuine issue concerning the effect of the Simons letter on the contract, the content of the letter itself is unambiguous. In plain language and figures, it sets out the amount of the increase in rent which the *defendant* maintains is correct.

"Interpretation of a written agreement becomes a factual inquiry into the parties' intention only when the language of that agreement is ambiguous as a matter of law. Where the parties' intention is clear from 'the four corners of the instrument,' no ambiguity exists requiring a factual inquiry into intention, and interpretation is a matter of law." *Pharmaceutical Society of the State of New York, Inc. v. Cuomo*, 856 F.2d 497, 501 (2d Cir.1988) (citations omitted). The clear terms of the Simons letter and the contract clause which mandates written modification preclude the court from examining parol evidence regarding the intent of the parties. Since the increases which the Simons letter approved in unambiguous terms were actually paid to Jackson Square by the defendant, the plaintiff has failed to state a cause of action for breach of contract. The first cause of action of Jackson Square's complaint must be dismissed.

## II. Jurisdiction under the APA

### A. Agency Discretion

■ HUD next argues that this court has no jurisdiction to enforce the increased payment alleged by plaintiff to be the agency's final determination because the Secretary's decision to increase rents is discretionary. The Administrative Procedure Act ("APA") provides for judicial review of final agency action except where precluded by statute or where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a) (1977). HUD cites well-established authority that the decision to increase rents is discretionary for the agency and therefore not reviewable. *Reiner v. West Village Associates*, 768 F.2d 31 (2d Cir.1985); *Grace Towers Tenants Ass'n v. Grace Housing Dev. Fund Co., Inc.*, 538 F.2d 491 (2d Cir.1976).

Plaintiff responds that the cases cited by HUD are all attempts by third-party tenants to protest rent increases. Here, the plaintiff is a party to the contract. Plaintiff argues that the court has jurisdiction absent "clear and convincing evidence of a legislative intent to restrict access to judicial review...." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971). The Supreme Court has

found only a very narrow restriction on judicial review of actions " 'committed to agency discretion.' ... The legislative history of the APA indicates that it is applicable in those rare instances where statute are drawn in such broad terms that in a given case there is no law to apply." 401 U.S. at 410, 91 S.Ct. at 821 (citation omitted). This court has previously determined that 42 U.S.C. § 1404a provides a waiver of sovereign immunity permitting Jackson Square to sue HUD for its action on the HAP contract. Item 30. Plaintiff asserts that disputes over 42 U.S.C. § 1437f regulatory contracts between a project sponsor and HUD are subject to judicial review as broadly as any commercial contract. *F.H.A. v. Burr*, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940).

Defendant counters that the rationale for preclusion of judicial review of the agency's decision to increase rents applies with equal force to project owners and tenants. In *Langevin v. Chenango Court, Inc.*, Judge Friendly stated that:

> [I]t would be most unusual for Congress to subject to judicial review discretionary action by an agency in administering a contract which Congress authorized it to make. Other factors tending in the direction of nonreviewability are the managerial nature of the responsibilities confided to the FHA, the need for expedition to achieve the Congressional objective, ... and the quantity of appeals that would result if FHA authorizations to increase rents were held reviewable....

447 F.2d 296, 303 (2d Cir.1971) (citations omitted). HUD claims that the decision to increase the rents in this case was a managerial determination of the appropriate rent level for the project. Defendant asserts that there is no greater reason for judicial review here than was presented in other cases simply because the level of increase is challenged by the project owner rather than the tenants. Defendant also argues that while this court may have jurisdiction under 42 U.S.C. 1404a to review a contract claim, that section does not expand the limited grant of jurisdiction available under the APA. *See Federal National Mortgage Assoc. v. LeCrone*, 868 F.2d 190, 193 (6th Cir.) *cert.* *denied*, 493 U.S. 938, 110 S.Ct. 335, 107 L.Ed.2d 324 (1989).

Plaintiff's argument that it is a party to a HUD contract and should not be barred from access to the courts to review an agency decision to correct a mutually acknowledged error in calculation is persuasive. The HAP contract itself contains a clause specifying that further adjustments can be made to cover special circumstances. Section 1.8c of the contract, entitled *Special Additional Adjustments*, reads in pertinent part that:

> Special additional adjustments shall be granted, when approved by the Government, to reflect increases in the actual and necessary expenses of owning and maintaining the Contract Units which have resulted from substantial general increases in real property taxes, utility rates, or similar costs ... but only if and to the extent that the Owner clearly demonstrates that such general increases have caused increases in the Owner's operating costs which are not adequately compensated for by automatic annual adjustments....

Item 31, Ex. 1. In the event that the Owner disagrees with the implementation of an aspect of the contract, Section 2.8a of the contract provides that:

> [A]ny dispute concerning a question of fact arising under this Contract which is not disposed of by agreement between the [HUD] field office and the Owner may be submitted by the Owner to the Secretary of [HUD]. The decision of the Secretary ... shall be final and conclusive, unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence.

Section 2.8b explains that:

> This Section does not preclude consideration of questions of law in connection with the decision rendered under paragraph a of this Section; Provided, however, that nothing herein shall be construed as making final the decision of any administrative official, representative, or board, on a question of law.

Item 31, Ex. 1. Significantly, the disputes clause does not except matters over which HUD has "discretion as a matter of law" and specifically permits judicial review.

Unlike the cases cited by the defendant, Jackson Square is challenging a HUD decision made pursuant to a contract between the parties which contains a disputes clause covering the decision. The plaintiff seeks judicial review of the agency's determination that the Buffalo area office properly included Jackson Square's automatic annual adjustment in the 6 percent increase authorized by the Assistant Secretary. The plaintiff has the contractual right to request a special adjustment and disputes the calculations made by HUD's Buffalo office to determine the amount of increase needed to correct the error. This appears to be the kind of disagreement envisioned by the contract's disputes clause. Therefore, the APA's § 701(a) exception to judicial review does not apply to plaintiff's second cause of action.

### B. Adequate Remedy at Law

■ The defendant next argues that review under the APA is precluded because Jackson Square has an adequate remedy in contract law. Section 704 provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." The defendant asserts that Jackson Square's suit is contractual in nature, and this court has determined it has jurisdiction over the contract claim under 28 U.S.C. § 1331. Therefore, the plaintiff has an adequate remedy in this court under its contract claim, and its cause of action to enforce payment pursuant to a final agency action under the APA does not lie.

Plaintiff contends that defendant cannot argue that plaintiff has an adequate remedy because it does not concede that plaintiff has an enforceable contract claim. It urges that the APA's "exception that was intended to avoid such duplication [of previously established special statutory procedures] should not be construed to defeat the central purpose of providing a broad spectrum of judicial review of agency action." *Bowen v.*

*Massachusetts,* 487 U.S. 879, 903, 108 S.Ct. 2722, 2736–37, 101 L.Ed.2d 749 (1988).

According to the allegations in the amended complaint, plaintiff's second cause of action challenges the procedure by which HUD's Buffalo field office refused to implement the Assistant Secretary's authorization to increase Jackson Square's rents by $24 per unit to compensate for a processing error. Although the relationship between the parties is contractually defined, Jackson Square's second cause of action requires the court to interpret a process defined by statute and regulation.

In the cases cited by defendant as authority, § 704 is raised as a jurisdictional bar to suit in district court because the plaintiff has an adequate remedy in Claims Court. *See, e.g., Estate of Watson v. Blumenthal,* 586 F.2d 925 (2d Cir.1978); *Alabama Rural Fire Insurance Co. v. Naylor,* 530 F.2d 1221 (5th Cir.1976). In a prior order denying defendant's motion to dismiss, this court determined that its jurisdiction exists, not only for the contract claim, but over the entire suit. Item 33. Without citing any authority, HUD now asserts that a district court with subject matter jurisdiction over a contract claim to which HUD is a party is barred from judicial review of the agency's final determination that its actions regarding the contract were proper based on its empowering statute and regulations. In effect, HUD is arguing that if the plaintiff has a contract claim, it cannot also pursue a cause of action challenging the statutory interpretation of the agency which led to the allegedly erroneous decision resulting in the contract claim.

Even if this anomalous situation could occur, the nature of the relief sought by Jackson Square mandates this court's jurisdiction under the APA. In *Bowen v. Massachusetts,* the Supreme Court clarified that the primary thrust of § 704 was to codify the exhaustion requirement but that "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action.... [Section] 704 does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures." 487 U.S. 879, 903, 108 S.Ct. 2722, 2736 (1988).

The Court then analyzed the effect of this section on the exclusive jurisdiction of the Claims Court for suits against the United States for money damages over $10,000. It rejected the restrictive interpretation urged by the Secretary of the Department of Health, Education, and Welfare that § 704 should be construed to bar review of the agency action in the district court because monetary relief against the United States is available in the Claims Court under the Tucker Act. Noting that the Claims Court has no power to grant equitable relief, the *Bowen* Court determined that the availability of review in the Claims Court was doubtful and the nature of the plaintiff's claim "may make it appropriate for judicial review to culminate in the entry of declaratory or injunctive relief that requires the Secretary to modify future practices." 487 U.S. at 905, 108 S.Ct. at 2738. When the necessary relief may exceed the powers of the Claims Court, the remedy available to the plaintiff in that Court "is plainly not the kind of 'special and adequate review procedure' that will oust a district court of its normal jurisdiction under the APA." 487 U.S. at 904, 108 S.Ct. at 2737.

The Federal Circuit Court of Appeals recently had an opportunity to apply *Bowen* to a contractually based suit very similar to this case. In *Katz v. Cisneros*, 16 F.3d 1204, 1208 (Fed.Cir.1994), the plaintiff also challenged HUD's calculation of HAP contract rents. The *Katz* court found that there was "no significant distinction" between the kind of relief sought in *Bowen* and that sought by the plaintiff.

> HUD argues that unlike *Bowen* this case involves a contract, which calls for another outcome. This distinction is not determinative. Merely because the challenged regulations are tracked in the language of the contract between [plaintiff] Hollywood Associates and [defendant] does not mean that Hollywood Associates seeks a kind of relief different from that in *Bowen* ... 'The answer to the sovereign immunity and jurisdiction questions depends not simply on whether a case involves contract issues, but on whether, despite the presence of a contract, plaintiffs' claims are founded only on a contract, or whether

they stem from a statute or the Constitution.'"

16 F.3d at 1209, *citing Transohio Sav. Bank v. Director, OTS*, 967 F.2d 598, 609 (D.C.Cir. 1992).

Jackson Square is also seeking prospective and declaratory relief in its second cause of action in challenging HUD's determination not to adjust the rents to cover an error in calculating utility costs. It requests a declaratory judgment that HUD acted improperly in failing to correct the error after the Assistant Secretary gave authorization to do so pursuant to 24 C.F.R. § 880.204(b)(1)(i)(B) (1990). This requires the court to review HUD's interpretation of the statute and regulations which governs its decisions. Jackson Square also seeks prospective relief in the form of future payments. Although contractually based, these claims and requests for relief exceed the bounds of a contract action and require statutory and regulatory interpretation. Moreover, Jackson Square's contract claim has been dismissed. Therefore, § 704 of the APA does not deny subject matter jurisdiction to this court to adjudicate the second cause of action.

## C. *Arbitrary and Capricious*

HUD next urges that even if the court finds jurisdiction under the APA, the agency is entitled to summary judgment because its decision was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). In general, the court is not empowered to conduct a de novo inquiry into the matter being reviewed but should make its decision on the basis of the factual record as it appeared before the agency. *Florida Power and Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985). HUD argues that the record clearly shows it acted within its considerable discretion to make special adjustments to project rents, and plaintiff has failed to allege any clear error of judgment.

As discussed above, there is a factual dispute regarding the significance of the Simons letter. The plaintiff maintains that the letter approved rent increases in the amount

sought by Jackson Square and constituted a final agency action which HUD failed to implement. HUD argues that this letter merely authorized the Buffalo field office to correct the utility cost error by raising the original rents. The affidavits and deposition excerpts produced by the parties offer support for both contentions and do not make clear the basis for the determination that Jackson Square would not get the requested increase. Clearly, there are genuine issues of facts regarding the decisionmaking process which preclude a grant of summary judgment under the arbitrary and capricious standard.

### III. Statute of Limitations

The parties agree that plaintiff's claim for judicial review under the APA is governed by a six-year statute of limitations. HUD contends that plaintiff's claim accrued on October 1, 1980, when HUD advised the plaintiff of the rents it would approve for the project. Since plaintiff waited until 1988 to commence this lawsuit, HUD argues that this claim is time-barred. *See* Items 33, 63, and 69.

Jackson Square replies that after it received notification from HUD that the annual increase in rental assistance would be $17,280 per annum rather than the requested $45,098, it engaged in a series of meetings and communications with HUD in an effort to persuade HUD to make a further contract modification. It was not until July 25, 1983, that HUD notified plaintiff that it would not respond favorably to Jackson Square's claim. Item 40, Ex. 3. In its supplemental memorandum, Jackson Square argues that its right of action to a judicial review of HUD's administrative determination grounded in the "disputes" provision of the HAP contract did not accrue until May 13, 1988, when HUD informed Jackson Square that it would not "revisit" the dispute. Item 67 at 4, Ex. 9. On February, 8, 1988, the plaintiff wrote to the HUD Buffalo office director stating that it had recently obtained HUD documents under the Freedom of Information Act pertaining to the determination to increase Jackson Square's rents which disclosed that the Department's determination in 1980 was "considerably higher" than the actual increase received. Item 67, Ex. 6. The letter further stated that "[t]he records are devoid of any reason or justification for disregarding the increase approved by Washington," and requested reimbursement for $17 per month per unit difference between the authorized and the actual increase. *Id.* HUD's Buffalo office responded that it saw no inconsistency and thought the matter resolved. Jackson Square then submitted the dispute to the Secretary of HUD in accordance with the disputes clause of the HAP contract and was notified by letter dated May 13, 1988, that HUD would do nothing further to resolve the dispute. Plaintiff claims that its administrative remedy pursuant to the disputes clause was exhausted by the issuance of the May 13 letter, and its right of judicial review only accrued on that date.

Jackson Square cites *Crown Coat Front Co. v. United States,* 386 U.S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967), to support this argument. In *Crown Coat,* the Supreme Court was asked to determine the accrual date of a claim arising under a disputes clause of a government contract. The Government argued that the date of accrual was the date of the completion of the contract. The *Crown Coat* Court noted that under the contract's terms, the contractor was required to submit his dispute to an administrative review process which could have taken longer than six years. If the Government's reckoning of the accrual date were correct, the contractor could then be barred from a judicial review of an adverse final agency decision. Thus, the Court determined that the contractor claims first accrues "upon the completion of the administrative proceedings contemplated and required by the provisions of the contract." 386 U.S. at 511, 87 S.Ct. at 1182. The Court reasoned that:

> Under the typical government contract, the contractor has agreed in effect to convert what otherwise might be claims for breach of contract into claims for equitable adjustment.... [W]hether and to what extent an adjustment is required are questions to be answered by the methods provided in the contract itself. The contractor must present his claim to the contracting officer, whose decision is final unless

appealed for final action by the department head or his representative. . . . [T]he contractor's claim was subject only to administrative, not judicial, determination in the first instance, with the right to resort to the courts only upon the making of that administrative determination.

*Id.* at 511–12, 87 S.Ct. at 1182. The Court also noted that the basis for judicial review cannot be ascertained prior to the final agency action because:

The focus of the court action is the validity of the administrative decision. Until that decision is made, the contractor cannot know what claim he has or on what grounds administrative action may be vulnerable. It is only then that his claim or right to bring a civil action against the United States matures and . . . he has the right to demand payment[,] . . . the hallmark of accrual of a claim. . . .

*Id.* at 513–14, 87 S.Ct. at 1183 (citation omitted). Jackson Square asserts that judicial review of its claim also did not ripen until the HUD secretary refused to reconsider the local office's decision in 1988.

HUD counters that Jackson Square's efforts to persuade the agency to provide further rent increases are only relevant to accrual of the statute of limitations if HUD's review constituted a necessary element of plaintiff's claim. The disputes clause of the contract states that "any dispute . . . under this Contract which is not disposed of by agreement . . . *may* be submitted by the owner to the Secretary. . . ." Item 31, Ex. 1, ¶ 2.8 (emphasis added). The defendant argues that because Jackson Square was under no obligation to submit the dispute to the Secretary of HUD, *Crown Coat* does not apply. Rather, a permissive administrative remedy does not affect the creation of the plaintiff's rights. *Lins v. United States,* 688 F.2d 784, 231 Ct.Cl. 579 (1982), *cert. denied,* 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 995 (1983).

HUD further claims that Jackson Square's suit should be barred even if the court finds that appeal under a permissive disputes clause may toll the statute of limitations because the plaintiff did nothing to pursue its claim between 1983 and 1988. HUD points out that, unlike the instant HAP contract, the *Crown Coat* contract included a 30 day deadline for appeal. The Court advised that when a contract has no time limitations of its own, "the contractor cannot delay unreasonably in presenting his claim." 386 U.S. at 519, 87 S.Ct. at 1186. HUD argues that Jackson Square could easily have kept within a six-year limitations period by acting promptly after receipt of the July 1983 letter.

Plaintiff does not respond to HUD's distinction between the tolling effect of permissive and mandatory administrative review processes. The court's own research has failed to reveal any definitive extension of the *Crown Coat* rule to cases in which the plaintiff chooses to pursue an administrative remedy without being required to do so. On the other hand, as discussed above, both parties agree that this court is limited to a review of a final agency action to determine whether it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). The parties disagree about what constitutes final agency action for this purpose, but it is clear that a determination must be made in order to ascertain when Jackson Square's cause of action accrued.

Jackson Square has failed to persuade the court that there was no final agency decision prior to the May 13, 1988, letter from the Secretary of HUD. Mindful of the *Crown Coat* admonition that a plaintiff should not delay unreasonably in pursuing agency review even in the absence of specified time limits, the court cannot agree that the statute of limitations was tolled for five years while plaintiff waited to appeal the last letter it received from the Buffalo field office. Moreover, the Secretary's letter states in plain terms that the agency refused to "revisit" the dispute (Item 67, Ex. 9), indicating that the agency considered the issue closed.

However, HUD's assertion that the final agency action is represented by the October 1, 1980, letter is equally unpersuasive. The parties had submitted into the record a series of letters and memoranda which are dated between February 19, 1980, and July 25, 1983. Items 40, Ex. 3; 43–57; & 67, Exs. 4–5. In addition, Jackson Square maintains

without dispute by the defendant that several meetings and conversations concerning the adjustments occurred during this time period. The October 1, 1980, letter states that "[a]fter a thorough review of supporting documentation, we are approving an adjustment in your contract rents due to an underestimation of the project's utility expense." Item 48. It then details the new rents, which the plaintiff contends were incorrect. There is no terminology to suggest that this is a final determination which the local office had no ability to review. Indeed, a December 24, 1980, letter from the director of the Buffalo field office invites further review. It states that "[a]ny further consideration for additional adjustments will require supporting data and corrected financial statements for FY 1979.... [I]t is the judgment of this office that we have followed the proper procedure and no additional adjustments are required at this time." Item 51. It is unclear whether Jackson Square subsequently submitted further supporting data. However, it did point out to the local office what it considered a discrepancy between the amount of increase authorized by the Simons letter and the amount actually received. There is no written indication that HUD took into account and rejected Jackson Square's interpretation of the Simons letter until July 22, 1983, when the area manager wrote to Jackson Square that:

> In regard to our July 5, 1983 meeting, you are advised that this Office has reviewed our processing of the rental adjustment to compensate for utility increases and found that is [sic] was consistent with Secretary Simon's memo of August 29, 1980.

Item 40, Ex. 3. Since Jackson Square claims that the Buffalo field office wrongly interpreted the Simons letter and that, by statute, HUD's local office was obliged to implement the approved increases authorized by the Assistant Secretary, the July 22, 1983, letter is the agency action which most reasonably can be construed as final for purposes of judicial review.

Jackson Square filed this suit in 1988, five years after receipt of the 1983 final agency action and within the six-year statute of limitations. Accordingly, the second cause of action is not time-barred.

### CONCLUSION

For the reasons elucidated in this opinion, defendant HUD's motion for summary judgment to dismiss plaintiff Jackson Square's breach of contract action is granted. HUD's motion for summary judgment on the plaintiff's second cause of action is denied. The sole question left to be determined in this lawsuit is whether HUD acted arbitrarily, capriciously, with abuse of discretion, or not in accordance with the law in determining that Jackson Square was not entitled to the full rental adjustment requested.

The court will meet with the parties on November 28, 1994, at 3 p.m. to discuss a further schedule.

So ordered.